**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

NICHOLAS COTTMAN, #418-215              *

    Plaintiff,                                   *

    v.                                           *      Civil No. RDB-16-3306

STATE OF MARYLAND, et al.                *

    Defendants.                                  *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR,**
**IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

    Defendants State of Maryland, Secretary Stephen T. Moyer and former warden Tyrone Crowder (the "State Defendants"), by their attorneys, Brian E. Frosh, Attorney General of Maryland, and Thomas E. Dernoga, Assistant Attorney General, in support of their Motion to Dismiss Plaintiff's Complaint or, in the Alternative, Motion for Summary Judgment, file this Memorandum of Law, and state as follows:

**I.     INTRODUCTION**

    Nicholas Cottman (#418-215), an former inmate at the Maryland Reception, Diagnostics and Classification Center ("MRDCC"), filed this Complaint in Federal District Court on September 30, 2016, alleging that several inmates beat him without valid reason, employing excessive force and threatening retaliation if he reported the physical abuse. The Plaintiff alleges that the Defendants violated the Maryland

Declaration of Rights in multiple respects, were responsible for State law intentional torts, and violated his Constitutional rights by engaging in cruel and unusual punishment, denying him due process, and denying him free speech.

The Defendants assert that these allegations are unfounded. There is no serious dispute concerning the allegations of excessive use of force by certain correctional officers; however, Plaintiff has failed to provide any specific allegation that would extend liability to any of the Defendants, most particularly not to the State of Maryland or Secretary Moyer. The Defendants had no role in the assault on Plaintiff and Plaintiff has failed to allege facts that would support supervisory liability, and there is no *respondeat superior liability* under 42 U.S.C. §1983. The Defendants are also protected by the doctrines of sovereign immunity and qualified immunity.

## II.   PROCEDURAL AND FACTUAL BACKGROUND

### A.   Plaintiff's Factual Allegations.

Plaintiff alleges that he was brutally beaten by correctional officials Kwasi Ramsey, Jemiah Green, and Richard Hanna in retaliation for an inmate assault on CO II Alade Ganiyu. The Complaint includes counts for violations of Articles 16, 24, 25, and 40 of the Maryland Declaration of Rights, battery, intentional infliction of emotional distress, conspiracy, negligent hiring, training, retention, and supervision, gross negligence, deliberate indifference, claims under 42 U.S.C. § 1983 for violations of the First, Eighth, and Fourteenth Amendments to the United States Constitution,

and a claim under *Monell* v. *Department of Social Services of the City of New York*.
The Complaint names Defendant Crowder in twelve of the fourteenth counts. The
State of Maryland is named in seven counts and Defendant Moyer is named in four
counts.

On September 29, 2013, inmates assaulted a correctional officer at MRDCC. At
that time, MRDCC staff concluded that five inmates were responsible for the assault:
Mark Brown, Nicholas Cottman, Raymon Lee, Reginald Thompson, and Kevin
Younger. The next day, the accused inmates then were assaulted in apparent retaliation
for their alleged involvement in the attack on the correctional officer. There is no
serious dispute that Plaintiff was beaten by correctional officials Kwasi Ramsey,
Jemiah Green, and Richard Hanna in retaliation for the assault on officer Ganiyu.

Plaintiff alleges that, at the roll calls at the beginning of two shifts on September
30, 2013, Defendant Crowder and Defendant Lieutenant Neil Dupree held up
photographs of Plaintiffs and intimated, if not instructed, that officers beat the inmates
who were responsible for the assault on the correctional officer the day before.

> 32.     Former Warden Crowder attended one of the roll calls. At
> some time during the roll call, Former Warden Crowder held up the pictures
> of all of the five inmates that had been removed from the dorm room after
> the fight on September 29, 2013, including Plaintiff. Former Warden
> Crowder identified the five inmates as being responsible for the fight.
> Despite official documents reflecting that there was no time when these five
> inmates' location was unknown, Former Warden Crowder stated that he was
> "looking for" the five inmates whose pictures he was, holding up.

ECF No. 1 at ¶32.

-3-

Plaintiff alleges that Defendant Crowder effectively put a "hit" on the Plaintiff and the other inmates, and had his express consent and authority. *Id*. at ¶¶35, 72, 83. Allegedly, after receiving the list, the three officers obtained a fogger (large can of mace) and a pair of handcuffs from the institution's equipment room. *Id*. at ¶39.) The three officers are alleged to have then proceeded from one inmate's cell to the next, systematically beating them. *Id*. at ¶40. Plaintiff further alleges that the assailants returned to escort him for medical treatment, but threatened retaliation if he told the medical staff the real cause of his injuries. *Id*. at ¶¶55-56.

Plaintiff alleges that Defendant Crowder failed to properly train and supervise the correctional officers at MRDCC, and that he failed to discipline officers who used improper inmate disciplinary methods. *Id*. at ¶¶69, 71.  Plaintiff alleges that, to the contrary, Defendants Crowder and Dupree:

> . . . instituted and established training, supervision, and discipline that was deliberately indifferent to MRDCC inmates' state and federal constitutional rights to be free from cruel and unusual punishment and deprivations of due process. Defendants Crowder and Dupree trained and supervised MRDCC corrections officers to carry out organized "hits" on inmates suspected of misconduct and failed to discipline those officers when the unjustified "hits" were completed.

*Id*. at ¶80.

Plaintiff alleges that Defendant Crowder failed to adopt policies that would have prevented violation of his Constitutional rights. *Id*. at ¶¶ 70, 84. Plaintiff also alleges that Defendant Crowder was deliberately indifferent in hiring Ramsey, Green, and Hanna, because he was aware of their history of violence. *Id*. at ¶ 80.

Plaintiff alleges that Defendants Crowder and Dupree allowed, fostered and encouraged an environment of vigilante justice in which correctional officers assaulted, tortured and punished inmates in an illegal, extrajudicial process.

Finally, Plaintiff alleges that, on information and belief, Defendant Moyer had knowledge of Defendant Crowder's reputation, tactics, and implementation of policy concerning vigilante justice and violence as a means of inmate and detainee control, but Defendant Moyer failed to discipline Defendant Crowder and correct the custom of violence that he had instituted.

### B.      Defendants' Response to Factual Allegations.

The Complaint names Defendant Crowder in twelve of the fourteen counts. The State of Maryland is named in seven counts and Defendant Moyer[1] is named in four counts.

Stated or unstated, each of the Counts against the State of Maryland and Defendant Moyer rely in some manner on a theory of respondeat superior. Plaintiff alleges no specific actions take by the State of Maryland or Defendant Moyer (or for Secretary Maynard) that give rise to any of the alleged causes of action. With respect to counts involving State of Maryland or Defendant Moyer, the Plaintiff makes generic, unsubstantiated assertions such as:

---

[1] The Complaint states that Secretary Moyer is sued in his official capacity as the Secretary of the DPSCS and stands in the shoes of all of his predecessors. The Complaint asserts that Secretary Moyer had the capacity and authority to hire, fire, and supervise final policymakers employed in DPSCS facilities, including Defendant Crowder. For clarification, at the time of the incidents that form a basis for the Complaint, the Secretary was Gary D. Maynard.

"… acting pursuant to Maryland DPSCS custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in their actions pertaining to Plaintiff." ECF No. 1 at ¶104 (First Claim, Maryland Declaration of Rights Article 24).

"…acting pursuant to State of Maryland custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in their actions pertaining to Mr. Cottman." ECF No. 1 at ¶120 (Second Claim, Maryland Declaration of Rights Articles 16 and 25).

"On information and belief, Defendant Moyer had actual or constructive knowledge of the lawless and ruthless environment maintained in the MRDCC." ECF No. 1 at ¶159 (Seventh Claim, Negligent Hiring, Training, Retention and Supervision).

"186. As Defendants Ramsey, Hanna, Green, Crowder, and Dupree's employer, the State of Maryland is responsible for the acts of battery, conspiracy and negligent training, hiring and supervision which were committed by the defendants within the scope of their employment.
187. On information and belief, Defendant Moyer had actual or constructive knowledge of the culture of vigilante justice inside MRDCC and failed to adequately supervise or discipline those responsible for this culture." ECF No. 1 at ¶¶186-187 (Ninth Claim, Respondeat Superior).

"198. Defendant Moyer, and his predecessors, and the Defendant State of Maryland have created and tolerated an atmosphere of lawlessness, and have developed and maintained long-standing, department-wide customs, correctional services related policies, procedures, customs, practices, and/or failed to properly train and/or supervise its corrections officers, supervisors, managers and administrators in a manner amounting to deliberate indifference to the rights of Mr. Cottman and of other inmates." ECF No. 1 at ¶198 (Tenth Claim, Maryland Declaration of Rights Articles 16, 24, 25 and 40).

"256. The State of Maryland, DPSCS and Defendant Moyer had actual knowledge or constructive knowledge of the lawless and ruthless environment maintained in the MRDCC. . . .

258. The State of Maryland, DPSCS and Defendant Moyer deliberately ignored the lawless and ruthless environment maintained in the MRDCC, and thus, failed to put a stop to or correct the widespread

pattern of cruel and unusual punishment. On information and belief, Secretary Moyer had knowledge, of Defendant Crowder and Dupree's methods of inmate and detainee control at MRDCC, but took no action to correct or discipline Crowder and Dupree. Secretary Moyer's failure to take action constituted deliberate indifference to MRDCC inmate and detainees' rights, because Secretary Moyer was aware of the harm they were subjected to, aware that the harms would continue if he did nothing, and decided to do nothing.

259. Although Defendants Moyer and the State of Maryland and the administrative officials knew or should have known of the customs of severe and deadly violence, the State of Maryland, Defendant Moyer and the administrative officials failed to adequately supervise and train the corrections officers and the administrative officials." ECF No. 1 at ¶¶256, 258-259 (Fourteenth Claim, Monell Claim).

With respect to Defendant Crowder, the only allegation against him is an unsupported assertion that he held up photos of the five inmates at a roll call, encouraging a retaliatory "hit". *See* ECF No. 1 at ¶¶32, 35. Many of the claims against Defendant Crowder are based solely on this unsupported assertion. (For example, the First, Fourth, Fifth, Sixth, Eighth and Twelfth claims.)

While the basis for this allegation is unclear, it appears to derive in part from IIU Report CIR 13-35-01334 I/C. *Exhibit 1*, at 0078-0124.[2] During the course of the IIU investigation, Detective Jonathan Wright received an anonymous phone call from

---

[2] *Exhibit 1* consists of Serious Incident Report #13-037 (0002-0077), the Narrative of IIU Report CIR 13-35-01334 I/C (0078-0124), and certain relevant exhibits to the IIU Report (i.e., Mr. Cottman's photographs and medical report, a Supplemental Report regarding Mr. Cottman and his written statement, a statement from inmate Raymon Lee, and a statement from inmate Avon Banks (0125-0158)). The complete IIU Report CIR 13-35-01334 I/C is too voluminous to attach as an exhibit and contains many extraneous exhibits. These documents are provided for the court's background, but the fact of the assaults is not in dispute, thus, the only specific reference to these documents is to portions relating to questions of Defendant Crowder's actions.

a person that sounded like an MRDCC correctional officer. *Id*. at 0099-0100. The caller advised that Major Wallace Singletary told certain officers to get the inmates that assaulted officer Ganiyu. *Id*. at 0099. The caller alleged that Defendant Crowder knew about the intended retaliation. *Id*. The called informed Detective Wright that Crowder called the evening shift "soft" at roll call, and that they should have bear the inmates." *Id*. at 0100. The caller claimed that Defendant Crowder stated that the matter had been handled. *Id*.

In spite of Detective Wright attempting to obtain the caller's identification, he refused. *Id*. In his summary, Detective Wright stated that the information from the unknown caller "could not be proven during this investigation." *Id*. at 0116.

Detective Wright provided extensive notes concerning his interview with Assistant Warden Suzanne Fisher who observed Defendant Crowder at numerous times after the assault on officer Ganiyu through the commencement of the investigation into the assault on the inmates. *Id*. at 0109-0110. Assistant Warden Fisher stated that she did not believe that Defendant Crowder had prior knowledge that the officers intended to assault the inmates. *Id*. at 0110.

In addition, the Plaintiff several claims on Defendant Crowder failed to properly train and supervise the correctional officers; failed to discipline officers; instituted and established training, supervision, and discipline that was deliberately indifferent to inmates' constitutional rights; trained and supervised corrections officers

to carry out organized "hits" on inmates; was deliberately indifferent in hiring Ramsey, Green, and Hanna knowing of the history of violence. Plaintiff alleges that Defendant Crowder allowed, fostered and encouraged an environment of vigilante justice in which correctional officers assaulted, tortured and punished inmates in an illegal, extrajudicial process. ECF No. 1 at ¶¶ 104, 120, 159, 186-187, 198, 256, 258-259. All of these allegations are simple, nonspecific assertions.

Defendant Crowder has provided a declaration, under oath, denying Plaintiff's allegations. *Exhibit 2* (Declaration of Tyrone Crowder). Defendant Crowder denies holding up a picture of the inmates during roll, stating that he was "looking for" these inmates, or making any statement or taking any action to request, demand or suggest that he was putting a "hit" on any of these inmates. *Id*. at ¶¶4-6. During roll call on September 30, 2013, Defendant Crowder informed the correctional officers of the assault on CO I Alade Ganiyu, and reminding the staff to be careful when dealing with inmates. *Id*. at ¶7.

Rather than encouraging an assault on the inmates, Defendant Crowder swears under oath that he began the process to have each of the five inmates transferred for their protection, but the process had not been completed before the assaults occurred. *Id*. at ¶8. When he became aware of the assault on the inmates, Defendant Crowder called IID to report the incident and commence an investigation. *Id*. at ¶9. He did not seek to cover up the assault on the inmates, including Plaintiff.

Defendant Crowder swears under oath that he did not establish a custom of violence at MRDCC for imposing discipline on inmates, nor did he train and supervise MRDCC corrections officers to carry out organized "hits" on inmates suspected of misconduct. *Id*. at ¶¶11, 14.  Defendant Crowder did not establish training, supervision, and discipline that was deliberately indifferent to MRDCC inmates' state and federal constitutional rights, nor did he fail to discipline officers engaged in excessive use of force. *Id*. at ¶¶10, 12. Defendant Crowder swears under oath that he was not deliberately indifferent in hiring Corrections Officers Ramsey, Green and Hanna. *Id*. at ¶13.

Defendant Crowder was found to have performed his duties as the warden in an unprofessional manner, and his actions failed to conform to standards. Consequently, Mr. Crowder accepted a demotion to major and he accepted a transfer to the Jessup Correctional Institution.[3]

## III.   STANDARD OF REVIEW

### A.   Motion to Dismiss

A court reviewing a complaint in light of a Rule 12(b)(6) motion accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff.  *Ibarra v. United States,* 120 F.3d 472 (4th Cir. 1997).  Such a motion should be granted when

---

[3] However, Defendant Crowder retired for health reasons before reporting to the Jessup Correctional Institution.

"it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). The court, however, need not accept unsupported legal allegations, *Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), or conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst,* 604 F.2d 844 (4th Cir. 1979).

A claim will lack "facial plausibility" unless the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To determine "whether a complaint states a plausible claim for relief," a court engages in a "context-specific task . . . draw[ing] on its judicial experience and common sense." *Id. at* 679. If the well-pleaded facts "do no permit the court to infer more than the *mere possibility* of misconduct," the complaint fails to state a claim and must be dismissed. *Id*. (emphasis added).

### B.     Motion for Summary Judgment

A motion for summary judgment may be granted if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.

"[A] complete failure of proof concerning an essential element ... necessarily renders all other facts immaterial." *Id.* at 323.  Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson,* 477 U.S. at 256.

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

In *Celotex,* the Supreme Court stated:

*Celotex,* 477 U.S. at 324.

However, "'a mere scintilla of evidence is not enough to create a fact issue.'" *Barwick v. Celotex Corp.,* 736 F.2d 946, 958-59 (4th Cir. 1984)(quoting *Seago v. North Carolina Theatres, Inc.,* 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd,* 388 F.2d 987 (4th Cir. 1967)).  There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-50 (citations omitted); *Scott v. Harris,* 550 U.S. 372, 381-382, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (Videotape evidence blatantly contradicted one parties

version of facts, so that no reasonable jury could believe it, a court should not adopt

that version of the facts for purposes of ruling on a motion for summary judgment.)

Based upon this standard, the pleadings and exhibits, the Defendant is entitled to

summary judgment.

## IV.     ARGUMENT

There is no dispute that Plaintiff and four other inmates were assaulted by

correctional officers Kwasi Ramsey, Jemiah Green, and Richard Hanna at MRDCC on

September 30, 2013. For the State Defendants, the questions are whether they bear any

legal culpability for the actions of these three correctional officers. These correctional

officers engaged in unauthorized excessive use of force, committing intentional torts

on Plaintiff. Such violent actions that violate the constitutional rights of an individual

are not committed in the official capacity of the officers or employees for purposes of

§ 1983. They are committed in the individual capacity of the officers or employees

who are personally liable in damages. *Ritchie v. Donnelly*, 324 Md. 344, 365, 597

A.2d 432 (1989).

> ### A.     The Eleventh Amendment Bars This Suit Against The State of Maryland and Against Defendants Moyer and Crowder In Their Official Capacity.

Under the Eleventh Amendment to the United States Constitution, a state, its

agencies and departments are immune from suits in federal court brought by its

citizens or the citizens of another state, unless it consents *Penhurst State School and*

*Hospital v. Halderman*, 465 U.S. 89, 100 (1984). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Ann. Code, State Gov't Art., § 12-201(a)(2004 Repl. Vol.), it has not waived its immunity under the Eleventh Amendment to suit in federal court. It is likewise well-established that the Eleventh Amendment bars federal court actions against the agencies and departments of the state, as well as the state itself. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100-01 (1984); *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (*per curiam*).

Also barred by the Eleventh Amendment are claims brought against state employees in their official capacity because a suit against a state officer in his official capacity is tantamount to a suit against the state itself. *Brandon v. Holt,* 469 U.S. 464, 471-72 (1985). Plaintiff has brought suit against Defendants Moyer and Crowder in their official capacity; therfore, "the state is the real, substantial party in interest. ... Thus, '[t]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter.' ...  And, as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief. ... .' *Pennhurst,* 465 U.S. at 101-02 (citations omitted).

Therefore, the Defendants are immune from suit in federal court for any claims brought against them in their official capacity, and all such claims should be

dismissed.

**B.      Defendants Moyer and Crowder Are Protected by Qualified Immunity.**

Even if this Court were to find that a violation of Plaintiff's constitutional rights occurred, the Defendants are entitled to summary judgment on the basis of qualified immunity.  "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (alteration in original). The qualified immunity inquiry is "assessed in light of the legal rules that were 'clearly established at the time the action was taken.'" *Id.*  Plaintiff must show more than that the right violated was clearly established in a general sense, but must "demonstrate that the particular actions" at issue "were unlawful under the law established at the time of the incident." *S.P. v. City of Takoma Park*, 134 F.3d 260, 266 (4th Cir. 1998) (citations omitted); see also *Wiley v. Doory*, 14 F.3d 993, 995 (4th Cir. 1994) (Powell, J.) ("[T]he proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged.").  In plain terms, a public official must "appreciate that he was violating" a plaintiff's asserted rights when he takes the action in question to be denied qualified immunity.  *Johnson v. Caudill*, 475 F.3d 645, 650 (4th Cir. 2007).

Plaintiff has made absolutely no showing that either Defendant Moyer or

Crowder could have "appreciated that he was violating" Plaintiff's rights. Moyer is tied into this suit by supposed actions of a predecessor, Gary Maynard. As spelled out above at pages 5-7, Plaintiff makes a series of bald assertions that Moyer (*i.e.,* Maynard) was responsible for unconstitutional actions occurring at MRDCC. For example, that he (1) had constructive knowledge of the lawless and ruthless environment maintained in the MRDCC; (2) created or allowed unconstitutional custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice; (3) failed to put a stop to or correct the widespread pattern of cruel and unusual punishment; and (4) failed to adequately supervise and train the corrections officers and the administrative officials. ECF No. 1 at ¶¶104, 120, 159, 186-187, 198, 256, 258-259. Not one specific fact is alleged to support any of these conclusory statements. Plaintiff's entire case against Defendant Moyer (really, former Secretary Maynard) has no factual basis. Plaintiff's claims against Defendant Moyer lack "facial plausibility" because he has failed to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

What facts support the existence of a lawless environment? What facts support former Secretary Maynard's awareness of such an environment? What facts demonstrate that any custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice exists to deprive inmates of their constitutional rights? What facts

support a bald assertion that former Secretary Maynard failed to adequately supervise and train corrections officers? In part, the same may be said for similar assertions against Defendant Crowder in the Second, Third, Seventh, Eleventh, Thirteenth and Fourteenth claims. Plaintiff makes a series of unsubstantiated conclusions.

However, Defendant Crowder is also grouped with defendants Ramsey, Green, Hanna and Dupree in nine counts. In these instances, he is treated as if he personally assaulted Plaintiff and threatened retaliation if Plaintiff informed the medical staff. As spelled out above at page 4, Plaintiff's entire basis is <u>one</u> unsubstantiated allegation that Defendant Crowder specifically encouraged correctional officers to beat the suspected assailants of officer Alade Ganiyu. *See* ECF No. 1 at ¶32. This allegation underlays the First, Fourth, Fifth, Sixth, Eighth and Twelfth claims. The Complaint baldly states that Defendant Crowder encouraged the assault, but states no factual basis. Without a plausible factual basis, Plaintiff cannot show that Defendant Crowder engaged in conduct that clearly violates established statutory or constitutional rights of which a reasonable person would have known. In his Declaration, Defendant Crowder specifically denies holding up a picture of the inmates and stating that he was "looking for" these inmates to suggest that he was putting a "hit" on any of these inmates. *Exhibit 2,* at ¶¶4-6. Defendant Crowder asserts that he informed the correctional officers of the assault on officer Ganiyu, and reminded the staff to be careful when dealing with inmates. *Id*. at ¶7.

-17-

With respect to Plaintiff's common law State claims (*i.e.*, Fourth, Fifth, and Eighth), each of these claims is asserted against the correctional officers and the administrative officials, but not against the State of Maryland or Moyer. The intentional criminal acts of officers Ramsey, Green and Hanna cannot be said to have occurred within the scope of their employment. They bear individual liability. Common law action for damages will lie for violations of the Declaration of Rights. *Ritchie*, 324 Md. at 369. However, the doctrine of sovereign immunity precludes such a damages action against the "State of Maryland." *Id*. A public official who violates a person's rights under the Maryland Constitution is personally liable for compensatory damages. *Clea v. City of Baltimore*, 312 Md. 662, 680 (1988).

For Defendant Crowder to be liable under these claims, Plaintiff must prove that Crowder was an active participant in the criminal scheme to assault him. He has not alleged substantive facts that would support such a finding, but if he did, Crowder would be in the same position as the correctional officers – having acted outside the scope of his employment. He would face liability in his individual capacity, but doctrine of sovereign immunity precludes such a damages action against the State of Maryland.

Because the main purpose animating the qualified immunity doctrine is to prevent "insubstantial claims" against government officials from proceeding to discovery, the question of immunity should be decided at "the earliest possible stage in

litigation." *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009) (citations omitted). *See Johnson*, 475 F.3d at 650. Summary judgment should therefore be granted in favor of these Defendants now, "at the earliest possible stage in litigation." *Pearson*, 129 S.Ct. at 815, *quoting Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (*per curium*).

**C.     There is No Liability Under 42 U.S.C. §1983 Unless there is Personal Participation.**

In order for liability to exist under § 1983, there must be personal involvement by the defendant in the alleged violation. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977); *Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir. 1994); *see also Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976).

There is no *respondeat superior* liability under §1983.  *Monell v. New York Dep't of Soc. Serv.*, 436 U.S. 658, 691 (1978).[4] Therefore, supervisory correctional officials can be held liable only for their own personal wrongdoing or for supervisory actions that themselves violate constitutional norms.  To establish supervisory liability in a §1983 action in general, the Fourth Circuit has held that it must be shown:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged

---

[4] The Fourteenth Claim is a "Monell Claim" against the State of Maryland and Defendant Moyer, based on the alleged actions. There is no *respondeat superior* liability under § 1983. *Monell*, 436 U.S. at 691. With regard to an action for money damages, neither a state nor a state agency nor a state official sued in his official capacity is a "person" within the meaning of § 1983. An "action for money damages under § 1983 cannot be maintained against a state, a state agency, or a state official sued in his official capacity." *Ritchie*, 324 Md. at 355. Thus, the Fourteenth Claim has no legal basis.

offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.), *cert. denied*, 513 U.S. 813 (1994)(citations omitted).  *See also*, *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984), *cert. denied*, 470 U.S. 1035 (1985).

As stated above in detail, Plaintiff merely alleges Defendants Moyer and Crowder, *inter alia*, are responsible for a lawless and ruthless environment at MRDCC; failed to correct the widespread pattern of cruel and unusual punishment; and failed to adequately supervise and train officers. ECF No. 1 at ¶¶104, 120, 159, 186-187, 198, 256, 258-259. However, Plaintiff makes no allegations that Defendants Moyer (or Maynard) or Crowder had any personal involvement in the criminal acts of excessive use of force and threat of retaliation. The allegations of knowledge of the lawless environment, and deliberate indifference shown by a failure to act, are purely naked assertions devoid of supporting facts.

Plaintiff has failed to establish supervisory liability; therefore, the State Defendants should be dismissed from this suit, or summary judgment should be granted in their favor.

### D.   The Complaint Fails to Allege Sufficient Facts to Support a Claim for a Violation of Plaintiff's First Amendment Rights.

Plaintiff's Third and Thirteenth Claims seek to raise free speech claims under

Article 40 of the Maryland Declaration of Rights and the First Amendment. Officers Ramsey, Green and Hanna undoubtedly threatened Plaintiff to intimidate him from reporting their excessive use of force. However, such threats that are part and parcel of an incident of excessive use of force do not raise free speech rights.

Plaintiff's allegations support a claim or claims that officers Ramsey, Green and Hanna engaged in unsanctioned criminal acts that deprived Plaintiff of his constitutional rights under the Eighth Amendment. However, these actions were outside their scope of employment. And, any threats of retaliation were not made as agents of the State of Maryland.

Threats by correctional officers to inmates, without more, do not state a claim. *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979); *Morrison v. Martin*, 755 F. Supp. 683, 687 (E.D.N.C. 1990) *aff'd,* 917 F.2d 1302 (4th Cir. 1990). Likewise, verbal harassment and aggravating language, without more, do not amount to a constitutional violation. *See Blades v. Schuetzle*, 302 F.3d 801, 805 (8th Cir. 2002) (racial slurs); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983); *Cole v. Cole*, 633 F.2d 1083, 1091 (4th Cir. 1980); *Johnson v. Glick*, 481 F.2d 1028 (2d Cir. 1973). In this case, Plaintiff has made credible allegations that as part of their criminal acts, officers Ramsey, Green and Hanna engaged in unconstitutional acts of threats of retaliation.

Numerous tortious acts by government officers or employees are committed in the scope of employment but are not caused by a law, policy or custom of the government entity. Therefore, under the Supreme Court's decisions, such torts are not committed in the official capacity of the officers or employees for purposes of § 1983. They are committed in the individual

capacity of the officers or employees who are personally liable in damages.

*Ritchie*, 324 Md. at 365 (citations omitted). Absent some specific evidence produced by Plaintiff of State laws, policies or customs that caused the acts against Plaintiff, these horrible acts were committed in the officers' individual capacity, and they are personally liable in damages. The State Defendants should be dismissed from this suit, or summary judgment should be granted in their favor.

### E.   The Claims for Violations of the Maryland Declaration of Rights Fail Because they are Not Separate from the Claims for Violations of the Eighth and Fourteenth Amendments.

Plaintiff's First, Second and Tenth Claims make allegations under Articles 16, 24 and 25 of the Maryland Declaration of Rights. Essentially, these claims are *in pari materia* with there Federal counterparts, the Eighth and Fourteenth Amendments.

Article 25 is construed *in pari materia* with the Eighth Amendment. *See, e.g. Aravanis v. Somerset County*, 339 Md. 644 (Md. 1995)("…it is well settled in this State that Article 25 of the Maryland Declaration of Rights is *in para materia* with the Eighth Amendment."), cert. denied, 516 U.S. 1115 (1996). Article 16, which includes a prohibition on cruel and unusual pains and penalties, is similarly treated as *in pari materia* with the Eighth Amendment.  Maryland courts have historically treated Articles 16 and 25 as providing the same protection as the Eighth Amendment to the United States Constitution. *See, e.g., Harris v. State*, 312 Md. 225, 237 n.5 (1988); *see also Dan Friedman*, THE MARYLAND STATE CONSTITUTION: A REFERENCE

GUIDE 42-44, 61-62 (Oxford ed. 2011) (and cases cited therein).

Article 24 is not specifically *in para materia* with the Fourteenth Amendment; however, Article 24 "embodies the concept of equal protection of the laws to the same extent as the Equal Protection Clause of the Fourteenth Amendment." *Murphy v. Edmonds*, 325 Md. 342, 353-54, 601 A.2d 102 (1990). United States Supreme Court decisions regarding the Equal Protection Clause of "the Fourteenth Amendment are practically direct authorities" with regard to Article 24 of the Declaration of Rights. *Attorney General v. Waldron*, 289 Md. 683, 705, *quoting Bureau of Mines v. George's Creek*, 272 Md. 143, 156, 321 A.2d 748, 755 (1974).

Because the claims for violations of the Maryland Declaration Of Rights fail because they are not separate from the claims for violations of the Eighth and Fourteenth Amendments, the State Defendants should be dismissed from this suit, or summary judgment should be granted in their favor.

### F.    The Complaint Fails to Allege Sufficient Facts to Support a Claim for Conspiracy.

A conclusory allegation of conspiracy is insufficient to state a claim. *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (unsupported claim of conspiracy to issue false disciplinary reports fails to state a claim); *see also Manis v. Sterling*, 862 F.2d 679, 681 (8th Cir. 1988) ("allegations of conspiracy must be pled with sufficient specificity and factual support to suggest a 'meeting of the minds'"); *Langworthy v. Dean*, 37 F. Supp. 2d 417, 424-25 (D. Md. 1999), *aff'd*, 181 F.3d 88 (4th Cir. 1999),

*cert. denied*, 528 U.S. 945 (1999) (conclusory allegation of conspiracy not to prosecute brought by alleged assault victim against state's attorneys). *Cf. Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (complaint alleging conspiracy to retaliate in conclusory terms deficient).

To sustain a conspiracy claim, there must be some evidence of a concerted effort or agreement between the defendants to deny the plaintiff a viable constitutional right. *Lawline v. Am. Bar Ass'n*, 738 F. Supp. 288, 295 n.7 (N.D. Ill. 1990) *aff'd,* 956 F.2d 1378 (7th Cir. 1992); *Carreon v. Baumann*, 747 F. Supp. 1290, 1291-92 (N.D. Ill. 1990). Mere naked assertions or boilerplate allegations concerning a conspiracy are insufficient to state a viable constitutional claim. *See Phillips v. Mashburn*, 746 F.2d 782, 785 (11th Cir. 1984); *Theis v. Smith*, 676 F. Supp. 874, 877 (N.D. Ill. 1988). Plaintiff makes naked assertions that Defendant Crowder participated in an agreement to assault Plaintiff, but fails to provide any substantive facts to support such allegations. ECF No. 1 at ¶¶150-153. Therefore, the State Defendants should be dismissed from this suit, or summary judgment should be granted in their favor.

## V.      CONCLUSION

Plaintiff has failed to provide any specific allegation that would extend liability to any of the Defendants, most particularly not to the State of Maryland or Secretary Moyer. The Defendants had no role in the assault on Plaintiff and Plaintiff has failed to allege facts that would support supervisory liability, and there is no *respondeat*

*superior liability* under 42 U.S.C. §1983. The Defendants are also protected by the doctrines of sovereign immunity and qualified immunity. Therefore, the State Defendants should be dismissed from this suit, or summary judgment should be granted in their favor.

Respectfully submitted,

BRIAN E. FROSH
Attorney General of Maryland

_____/s/
THOMAS E. DERNOGA
Assistant Attorney General
Federal Bar No. 12377
St. Paul Plaza - 19th Floor
200 St. Paul Place
Baltimore, Maryland  21202
(410) 576-6429 (Telephone)
(410) 576-6880 (Telefax)
E-mail: tdernoga@oag.state.md.us

Filed: January 31, 2017

*Attorneys for Defendants*