IN THE U.S. DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(BALTIMORE DIVISION)

| | | |
|---|---|---|
| NICHOLAS COTTMAN, | : | |
| | : | |
| Plaintiff, | : | Case No.: 1:16-CV-03306:RBD |
| v. | : | |
| | : | |
| STATE OF MARYLAND, et al. | : | |
| | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Defendants concede that there is "no serious dispute that Plaintiff was beaten by correctional officials Kwasi Ramsey, Jemiah Green, and Richard Hanna in retaliation" for his alleged involvement in an earlier assault on another correctional officer, Alade Ganiyu. (Defendants' Motion to Dismiss ("Def. Mot."), p. 3). Despite moving this Court to dismiss the case because Plaintiffs have supposedly failed to allege that former Warden Tyrone Crowder had any role in the assault, Defendants also acknowledge: "Plaintiff alleges that, at the roll calls at the beginning of two shifts on September 30, 2013, Defendant Crowder and Defendant Lieutenant Neil Dupree held up photographs of Plaintiff and intimated, if not instructed, that officers beat the inmates who were responsible for the assault on the correctional officer the day before." (Ibid.). Defendants seem to have contradicted their own argument. Federal pleading standards require that the Motion to Dismiss Crowder in his individual capacity be denied.[1]

---

[1] Plaintiff acknowledges that the State's exercise of Eleventh Amendment Immunity prevents him from proceeding against Defendants Crowder and Moyer in their official capacity in this action.

In a curious attempt to short circuit Plaintiff's right to discovery concerning the particulars of former Warden Crowder's involvement in the retaliatory assault, Defendants submit a 158-page hearsay report of the results of an investigation conducted by Internal Investigations Unit Detective Jonathan Wright and a declaration from former Warden Crowder denying Plaintiff's allegations under oath, specifically swearing that he did not hold up pictures of inmates suggesting that they should be beaten. (Def. Exh. 2, Declaration of Tyrone Crowder ("Crowder Decl."), ¶ 4). As an initial matter, the sworn testimony of one Defendant is not sufficient to dispose of a case on summary judgment—particularly not before Plaintiff has had an opportunity to conduct discovery. More importantly, Defendant Officer Richard Hanna has testified under oath that Crowder did in fact hold up pictures of inmates at the September 30, 2013 roll call and order their assault. (Pl. Exh. A, Testimony of Richard Hanna, p. 14:13-16:25). This evidence in itself—not to mention the numerous statements of witnesses in Detective Wright's report that must be investigated—creates a genuine issue of material fact as to whether Crowder in fact called for a "hit" on Plaintiff by holding up his picture in roll call.

In short, Plaintiff has not only provided specific and substantive allegations regarding former Warden Crowder's conduct, but those allegations have already been supported by evidence and sworn testimony gathered by the State itself. Defendants' request to dismiss the case under Fed. R. Civ. P. 56 must also be denied.

## II. FACTS

There is no dispute that Plaintiff was viciously beaten by three correctional officers in retaliation for his perceived involvement in a fight with a correctional officer. (Def. Mot., p. 3). There also seems to be no dispute that Plaintiff was not involved in the original altercation that

incited Defendants' revenge. (*See* Complaint ("Compl."), ¶ 26; Def. Exh. 1, at 0100). Despite his lack of involvement, Plaintiff was placed in a separate cell after inmates assaulted CO Alade Ganiyu on September 29, 2013. (Compl. ¶ 30).

Early the next morning, Plaintiff was savagely beaten by Sergeant Ramsey, Officer Green, and Officer Hanna, who wrapped handcuffs around their fists to inflict more damage during the assault, and who obtained mace and other tools from the Men's Reception, Diagnostic and Classification Center ("MRDCC") equipment room with assistance from other officers. (Complaint ("Compl."), p. ¶ 39, Pl. Exh. A, p. 16:20-17:19). Defendants Ramsey, Green, and Hanna proceeded from one victim's cell to the next, systematically assaulting them, each time with the assistance of MRDCC correctional staff. (Id. ¶¶ 40-42, Def. Exh. 1, at 0102, 0104, 0113 (describing Officers Barnett, Day, and Clark providing Defendants with keys to inmates' cells or vacating their post in order to allow the assault). Defendants Ramsey, Green, and Hanna then threatened Plaintiff that he would be assaulted again if he did not provide MRDCC medical staff with a false report that he suffered his injuries when he fell off of his bunk, and personally escorted Plaintiff to the infirmary to ensure he fell in line. (Id., ¶¶ 55-56, 61, *see also* Def. Exh. 1, at 0098 (describing Sergeant Ramsey escorting the victims to the MRDCC medical department).

On the morning Plaintiff was assaulted, former Warden Tyrone Crowder attended a staff roll call wherein he presented pictures of the inmates suspected of assaulting officer Ganiyu. (Compl. ¶ 32, Pl. Exh. A, p. 14:12-16:5). Former Warden Crowder stated that these inmates were in fact responsible for officer Ganiyu's assault and stated that he was "looking for" them, despite the fact that he knew they had each been placed in separate cells as a result of their

suspected involvement. (Compl. ¶ 32, *see also* Def. Exh. 1, at 0100 (describing an anonymous report that Crowder said officers "should had beat the inmates"). Crowder left the roll call stating that the matter had "been handled," and relied on Sergeant Ramsey to perform the hit given Crowder's knowledge of Ramsey's history of violence. (Compl. ¶¶ 35-37, *see also* Def. Exh. 1, at 0100 (informant's report that Crowder left the roll call stating "it was handled"; Def. Exh. 1, at 0107 (inmate's report that Crowder and Ramsey "hung out together"); Def. Exh. 1, at 0089 (redacted history of multiple complaints against Sergeant Ramsey)).

Sergeant Ramsey gave Defendant Hanna a list of inmate names and cells and stated that "they had business to take care of." (Compl. ¶¶ 34, 37, Pl. Exh. A, p. 13:7-8). After Defendant Hanna was shown the list of inmates who needed to be punished, he, Ramsey, and Green went to the MRDCC armory to pick up a fogger, a can of mace, and handcuffs. (Compl. ¶ 39, Pl. Exh. A, p. 16:22-25). None of these items was signed out on armory logs. (Ibid, Pl. Exh. A, p. 17:15-19). Defendant Hanna has testified to these facts under oath. (Ibid).

Former Warden Tyrone Crowder used vigilante justice and officer-driven violence to discipline and control inmates. (Id. ¶¶ 65-66). Defendant Crowder's managerial policy was on full display on the morning of September 30, in which he used secrecy, coerced staff silence, and brutal violence to execute a hit on five specific inmates including Plaintiff in retaliation for their suspected involvement in an assault on a MRDCC officer. (Id. ¶¶ 65-72). In short, Defendant Crowder's was the primary moving force behind Plaintiff's assault—because he ordered it. (Compl. ¶ 97). An anonymous informant reported these facts to Detective Jonathan Wright of Internal Investigations, but Detective Wright reported that these facts "could not be proven

during this investigation." (Def. Exh. 1, at 0116). Defendant Crowder was later dismissed due to his "unprofessional management" of MRDCC. (Def. Mot., p. 10).

## III. ARGUMENT

When ruling on a motion to dismiss, a court accepts all well-pled facts as true and views these facts in the light most favorable to the plaintiff in determining whether the complaint adequately states a claim to relief. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Because the plaintiff must present a claim for relief that gives rise to an inference that liability is plausible, the court must employ a "context-specific inquiry, drawing on the court's experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679-680 (2009). If the plaintiff's allegations amount to a plausible inference of liability, a motion to dismiss must be denied. *Id.*, at 678. Here, Plaintiff's allegations taken as true clearly establish Defendant Crowder's personal participation in Plaintiff's assault, as well as a plausible conclusion that Crowder acted with malicious intent to cause Plaintiff harm.

    a. <u>Plaintiff Has Specifically Alleged Crowder's Personal Participation in the Assault</u>

Defendants' principal contention relies on the fact that Plaintiff has failed to allege any personal participation in the savage assault on Plaintiff by former Warden Crowder. A cursory review of Plaintiff's Complaint reveals quite the opposite. (*See, e.g.,* Compl. ¶¶ 32-37 (describing Crowder's ordering the assault with knowledge that it would be carried out by officers with a history of violence); ¶¶ 65-72 (Crowder's encouragement of a culture of vigilante justice and violence while occupying a leadership role at MRDCC); ¶ 172 (Crowder's gross

5

negligence in encouraging illegitimate discipline through physical violence and in expressing his disappointment that violence had not been used to subjugate the inmates previously). Defendants cannot seriously contend that Plaintiff has not alleged that former Warden Crowder was the driving force behind the savage and vicious beating of Plaintiff in retaliation for a crime he did not commit. (*C.f.,* Compl. ¶¶ 71, 81, 101, 116, 255; Def. Mot., p. 3).

  b. <u>Defendant Crowder Is Not Entitled to Sovereign Immunity for Actions Motivated by Malice</u>

The State of Maryland has waived its liability for tort claims arising from federal and state law only in its own courts, and in situations in which it makes the affirmative decision to waive its sovereign immunity by proceeding with litigation in federal district court. Md. Code Ann., State Gov't § 12-104; *Young v City of Mount Ranier*, 238 F.3d 567, 578 (4th Cir. 2001); *White v Maryland Transp. Authority*, 151 F.Supp.2d 651, 657-58 (Md. 2001). The State's exercise of sovereign immunity, however, does not extend to claims of malice or gross negligence alleged against State officials in their individual capacity. Md. Code Ann. Courts & Judicial Proceedings § 5-222(b); *Barbre v. Pope*, 402 Md. 157, 181-82 (2007). Where a state official's conduct is motivated by an "evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud," the defense of sovereign immunity is unavailable, and the official must bear the risk. *Lee v. Cline*, 384 Md. 245, 267-268 (2003) (*citing Shoemaker v. Smith*, 353 Md. 143, 163-164 (1999) (discussing the Maryland General Assembly's intent in retaining a subjective limitation on waivers of sovereign immunity).

Crowder's conduct, as alleged, evidences a clear intent to cause Plaintiff severe physical pain and suffering in retaliation for a perceived involvement in an assault on Officer Ganiyu.

(Compl. ¶¶ 32-37). Where a state official's offensive conduct is targeted towards a specific individual or motivated by personal animosity, courts have found that conduct amounted to "actual malice" within the meaning of Md. Code. Cts. & Jud. Proc. § 5-222(b). *See e.g.*, *Town of Port Deposit v. Petetit*, 113 Md. App. 401, 418, *cert. denied* 346 Md. 27 (1997) (officer fired shots at plaintiff's car, stopped plaintiff's car and pointed his gun at him after witnessing plaintiff strike a pedestrian); *Okwa v. Harper*, 360 Md. 161, 172 (2000) (airplane passenger dragged from terminal, struck in the head, and "had his hands cuffed twisted by his thumbs"); *Sawyer v. Humphries*, 322 Md. 247, 261-62 (police officer threw rocks at plaintiff's car, assaulted and battered plaintiff without provocation). Defendants themselves acknowledge that Plaintiff has alleged Crowder ordered a hit on the five inmates suspected of assaulting Ganiyu at a September 30, 2013 roll call meeting. (Def. Mot., p. 3; Compl. ¶ 32). Crowder's order for an extra-judicial retaliatory assault, if true, would support a finder of fact's decision that he was motivated by an "intent to injure," or that he acted with "knowing or deliberate wrongdoing." *Lee*, *supra*, 384 Md., at 268. Despite its legal argument to the contrary, Defendant explicitly acknowledges that Plaintiff has alleged facts supporting Crowder's personal participation in a scheme to brutally assault Plaintiff in violation of his established Constitutional rights. (*See, e.g.,* Def. Mot., p. 3).

    c. <u>Crowder is Not Entitled to Qualified Immunity for His Actions that Clearly Violated The First and Eighth Amendment of the U.S. Constitution</u>

While the principles of qualified immunity shield government officials from liability resulting from their performance of discretionary functions connected to the furtherance of their duties, that immunity extends only to conduct that does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *S.P. v. City of Tacoma*

*Park et al.*, 134 F.3d 260, 265 (1998) (*citing Harlow v. Fitzgerald*, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982)). To determine whether an officer is entitled to qualified immunity, the Court must "(1) identify the right allegedly violated, (2) determine whether the constitutional right violated was clearly established at the time of the incident, and (3) evaluate whether a reasonable officer would have understood that the conduct at issue violated the clearly established right." *Ibid*. If the right was not clearly established, or if a reasonable officer might not have known that his conduct violated that right, the officer is entitled to immunity. *Ibid*. (*citing Smith v. Reddy*, 101 F.3d 351, 355 (4th Cir.1996)). Put in other words, qualified immunity has been extended to protect "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986).

1. <u>Plaintiff's Rights Under the Eighth Amendment Were Clearly Established</u>

Plaintiff has an established constitutional right to be free from cruel and unusual punishment. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) ("the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners."). More specifically, and as established through at least two decades of jurisprudence, the Eighth Amendment prohibits state officials from acting with a subjective intent to disregard a substantial risk of serious harm to a plaintiff, as well as prohibiting officials from taking action to cause Plaintiff specifically and individualized harm. *Id*. at 847; *see also Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) ("[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."); *Whitley v. Albers*, 475 U.S. 312, 319-21 (1986).

Crowder initiated the assault with full knowledge that Plaintiff would be caused severe and substantial injury in retaliation for his supposed involvement in an assault on a correctional officer. (Compl. ¶ 32). Knowing that Sergeant Ramsey would carry out this assault, and that all three of the officer Defendants had a history of violence and tendency towards vigilante justice, Defendant Crowder also knew of the risk of serious harm to Plaintiff, but ordered the Defendants to commit the assault anyway. (Compl. ¶¶ 35-37). If Plaintiff's allegations are correct, Crowder's order places him outside the protections of the doctrine of qualified immunity for violations of the U.S. Constitution.[2] *City of Takoma Park*, *supra,* 134 F.3d, at 266; *Harlow*, *supra*, 457 U.S., at 818. Ordering an extrajudicial assault on Plaintiff by jailhouse enforcers is not a legitimate exercise of the state's penological prerogative. It is quite simply cruel and unusual punishment. *Farmer*, *supra*, 511 U.S., at 832-833.

2. <u>Plaintiff's Rights Under the First Amendment Were Clearly Established</u>

Plaintiff also had a well-established right to speak with his medical providers freely, and to not have that speech restricted by government officials. *Texas v. Johnson*, 491 U.S. 397, 414, (1989) ("If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable."); *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819 (1995) ("It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys."); *City of Akron v. Akron Ctr. for Reproductive Health*, 462 U.S. 416, 445 (1983) (invalidating regulation that placed physicians in "undesired and uncomfortable straitjacket[s]" in communicating with their patients).

---

[2] Defendants present no argument that Defendant Crowder is entitled to qualified immunity for his violations of the Maryland Declaration of Rights. Plaintiff is also unaware of any authority that would provide Crowder with qualified immunity from those causes of action.

In fact, the foundation of the medical profession—informed consent—also underlies the Supreme Court's jurisprudence regarding a doctor's right to speak, and a patients right to tell their doctor the specific facts of their condition. *See, e.g., City of Akron*, *supra*, 462 U.S., at 445, (1983) (discussing relationship of trust between patient and doctor); *Roe v. Wade*, 410 U.S. 113, 129, 162 (1973) (discussing importance of consultation between physician and patient consultation in arriving at best medical judgment and including the First Amendment in the penumbra of rights that protects full and frank communication with one's physician).

While cases from the United States Supreme Court, the Fourth Circuit, or the highest court of the state in which the incident took place should be consulted in deciding whether a right was clearly established at the time the incident took place, *Lefemine v. Wideman*, 672 F.3d 292, 299-300 (4th Cir. 2012) (*overruled on other grounds by Lefemine v. Wideman*, 133 S. Ct. 9 (2012)), the "nonexistence of a case holding the defendant's identical conduct to be unlawful does not prevent denial of qualified immunity [because] 'qualified immunity was never intended to relieve government officials from the responsibility of applying familiar legal principles to new situations.'" *Wilson v. Kittoe*, 337 F.3d 392, 403 (4th Cir. 2003) (quoting *Trulock v. Freeh*, 275 F.3d 391, 409 (4th Cir. 2001) (Michael, J. concurring)); *see also Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("officials can still be on notice that their conduct violates established law even in novel factual circumstances.").

Plaintiff claims that the Defendants in this case, driven by former Warden Crowder and wholly adopted by Lieutenant Dupree, specifically informed Plaintiff that if he did not lie to medical staff, he would be brutally assaulted again. This is much more than mere "verbal harassment," as Defendants argue. (Def. Mot., p. 21). Furthermore, the cases cited by

Defendants are inapposite, at best. *See, e.g., Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (failure to send letter regarding consumer dispute with department store did not violate First Amendment); *Morrison v. Martin*, 755 F. Supp. 683, 687 (E.D.N.C. 1990) *aff'd* 917 F.2d 1302 (4th Cir. 1990) (taking judicial notice of the fact that inmate's complaint that officers put voices inside his head could not be true, and granting motion to dismiss); *Blades v. Schuetzle*, 302 F.3d 801, 805 (8th Cir. 2002) (failure to inform prisoner of threat made against him did not violate Eighth Amendment); *McFadden v. Lucas*, 713 F.2d 143, 147-148 (5th Cir. 1983) (acknowledging plaintiff's First Amendment right to groom his beard according to religious practices); *Cole v. Cole*, 633 F.2d 1083, 1091 (4th Cir. 1980) (dismissing plaintiff's cause of action for harassment at a traffic stop because no harm resulted from the defendant officer's verbal harassment); *Johnson v. Glick*, 481 F.2d 1028 (2d. Cir. 1973) (complaint against jail warden for excessive force dismissed where plaintiff did not allege that warden had authorized the assault).

Although "Officers Ramsey, Green and Hanna undoubtedly threatened Plaintiff to intimidate him from reporting their excessive use of force" Defendant seems to deny that these threats were "part and parcel of an incident of excessive use of force." (Def. Mot., p. 21). These were more than "unsanctioned" criminal acts. (Ibid.). They were assaults directly ordered by Defendant Crowder's in furtherance of his management policy for MRDCC, which was to maintain order and discipline through vigilante justice.

d. Crowder's Personal Participation in the Conspiracy to Violate Plaintiff's Constitutional Rights is Clear From the Face of the Complaint

To adequately allege a conspiracy, Plaintiff must plead facts to indicate that there was: 1) an agreement to assault Plaintiff; 2) acts taken in furtherance of the conspiracy; and 3) that he was damaged as a result. *Lloyd v. GMC*, 397 Md. 108, 154 (stating elements of civil conspiracy). Defendant cites cases in which complaints were dismissed because of a lack of specific allegations of conspiracy. *Langworthy v. Dean*, 37 F. Supp. 2d 417, 424-425 (D. Md. 1999) *aff'd* 181 F.3d 88 (4th Cir. 1999) (dismissing for lack of specificity as to time, place, and effect of conspiracy). *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (dismissing complaint of conspiracy to prevent plaintiff from filing lawsuits).

In this case, Plaintiff has specifically pled the precise moment the conspiracy came into existence (Sept. 30, 2013, at a roll call), what it was intended to accomplish (the brutal assault of Plaintiff in retaliation for a crime he did not commit), and the acts completed by each Defendant to fulfill the object of the agreement to assault Plaintiff in retaliation (ordering the assault, obtaining equipment for the assault outside of the usual channels, assaulting the Plaintiff, preventing him from telling doctors what happened). Defendants claim that Plaintiff's allegations are "naked or boilerplate," and that he "fails to provide any substantive facts" is simply not accurate. (Def. Mot., p. 24).

e. <u>Defendants Submit No Authority to Suggest that Causes of Action May Not Overlap</u>

Defendants contend that Plaintiff's claims for violations of the Maryland Declaration of Rights "fail because they are not separate from the claims for violations of the Eighth and Fourteenth Amendments." (Def. Mot., p. 23). Yet, Defendants cite no authority to support the proposition that Plaintiff cannot pursue relief under both causes of action. In fact, Plaintiffs routinely succeed in proving violations of both constitutional documents in the same matter. (*See, e.g., Attorney General v. Waldron*, 289 Md. 683 (1980) (cited by Defendants)). Defendants are simply overreaching.

The cases and sources cited by Defendants stand only for the proposition that the inquiry required of courts in analyzing violations of the particular provisions of the U.S. Constitution are similar to equivalent provisions in the Maryland Declaration of Rights because they were both written in the same historical context. *See, e.g., Aravanis v. Somerset County*, 339 Md. 644, 656-657 (Md. 1995) *cert. denied* 516 U.S. 1115 (1996); *Harris v. State* 312 Md. 225, 237 n. 5 (1988) (Maryland Supreme Court declining to rule on applicability of Eighth Amendment because Article 25 of the Maryland Declaration of Rights provided a state law basis for application to a statute allowing government to take possession of property involved in drug trafficking); *Murphy v. Edmonds*, 325 Md. 342, 353-54 (1990) (noting that due process clauses of Fourteenth Amendment and Article 24 of the MD Declaration of Rights "are obviously independent and capable of diversion," but considering Plaintiff's claims in light of both constitutional provisions). *Attorney General v. Waldron*, 289 Md. 683, 705, 729 (noting the same—and finding that the statute in question violated both Article 24 and the Fourteenth Amendment); Dan

Friedman, *The Maryland State Constitution, A Reference Guide* 42-44, 61-62 (Oxford ed. 2011); *see also Delnegro v. State*, 198 Md. 80, 88-89, 81 A.2d 241, 245-46 (1951) (quoting Justice Story: "[the prohibition against cruel and unusual punishments was] adopted as an admonition to all departments of the national government, to warn them against such violent proceedings as had taken place in the arbitrary reigns of some of the Stuarts." *2 Story on the Constitution*, § 1903.)

Simply put, there is no authority for Defendants' argument that Plaintiff's claim for violation of the Maryland Declaration of rights "fail because they are not separate from the claims for violation of the Eighth and Fourteenth Amendments." (Def. Mot., p. 23). Instead, Plaintiff's well-pled allegations of both constitutional provisions mandates that his causes of action proceed.

### f. Defendants Do Not Contest Liability Under State Common Law

Finally, Defendants present no argument that Plaintiff has failed to state a claim against Crowder for state common law claims of battery, intentional infliction of emotional distress, negligent hiring or negligent supervision. Accordingly, these claims must also proceed against former Warden Crowder in his individual capacity as a joint tortfeasor. *Ferris v. Haymore*, 967 F.2d 946, 956 (joint and several liability applies where multiple defendants are responsible for a single tort); *Restatement* (*Second*) *of Torts* §§ 876-877 ("one is subject to liability if he (a) orders or induces the conduct, if he knows or should know of circumstances that would make the conduct tortious if it were his own.")

g. Defendants' Motion for Summary Judgment Is Procedurally Premature and Unsuccessful

Defendants rely on a declaration executed by Defendant Tyrone Crowder that he: 1) did not suggest that officers beat up inmates at a roll call; 2) did not establish a culture of violence at MRDCC; 3) did not fail to discipline the other Defendants for improper use of force; and 4) was not deliberately indifferent in hiring those Defendants for the proposition that this case should be disposed of on summary judgment, before this Court has even ordered a scheduling conference. (Def. Mot., p. 10; Declaration of Tyrone Crowder ("Crowder Decl."), ¶¶ 10-14). If only it were that easy.[3]

What's more, the state of Maryland affirmatively adduced evidence in the criminal proceedings against Defendants Green and Ramsey that Tyrone Crowder held up a photograph of the officer who had been assaulted, as well as photographs of the inmates who supposedly had assaulted that officer. (Pl. Exh. A, Testimony of Richard Hanna, p. 14:13-16:25). Interestingly, the state now presents a defense for Warden Crowder in this proceeding based on the premise that he did not actually hold up these photographs. (Def. Exh. 2, Declaration of Tyrone Crowder, ¶¶ 4-5). While the state may be judicially estopped from making the argument[4]—a point which will be addressed after further examination of the state's arguments against Ramsey and Green in seeking their criminal conviction—these conflicting sworn statements alone present a genuine issue of material fact that must be resolved by a jury. *Anderson v. Liberty Lobby*, 477

---

[3] Even in medieval Europe, a Defendant was required to produce at least three witnesses willing to swear under oath that his side of the story was true. *See, e.g., U.S. v. Jackson,* 688 F.2d 1121, 1127 (7th Cir. 1982); *Holt v. Feigenbaum*, 52 N.Y.2d. 291, 297, n. 2 (NY Ct. App. 1981); Glanville, *Treatise on the Laws and Customs of the Kingdom of England*, Book 1 *chapter.* 9 (describing how a defendant could come to court "twelve-handed," or bring eleven neighbors to raise their hands along with his own and swear under oath). Not even a single hearsay witness in the report states that Crowder did not order the assault on Plaintiff through a system of jailhouse justice.

[4] Judicial estoppel prevents a party from adopting a position that is inconsistent with a stance taken in prior litigation. *John S. Clark Co. v. Faggert & Frieden, P.C.,* 65 F.3d 26, 28 (4th Cir. 1995).

U.S. 242, 247 (1986); *Scott v. Harris*, 550 U.S. 372, 378 (2007) (court must consider facts and inferences presented on motion for summary judgment in the light most favorable to the non-moving party). In addition to this rather glaring dichotomy, there are multiple facts in Defendants' own Exhibit that flatly contradict Crowder's declaration, especially when considering these facts in the light most favorable to Plaintiff.[5] For example:

- Lieutenant Dupree printed out multiple photographs of inmates involved in the assault on Officer Ganiyu that showed Ganiyu injured and the inmates uninjured. (Def. Exh. 1, at 0097-98). Lt. Dupree printed out these photographs at the request of Major Singletary, so that they could be shown in roll call (Def. Exh. 1; at 0110);

- Lt. Dupree initially reported that Crowder was not physically present at the September 30, 2013 roll call, which is now contradicted by Crowder's current testimony under oath. (Def. Exh. 1, at 0111);

- Assistant Warden Susan Fisher spoke with Crowder about not transferring the inmates because she was concerned about potential retaliation by officers; Crowder stated that "he was working on it." (Def. Exh. 1, at 0109);

- Asst. Warden Fisher repeatedly observed Sergeant Ramsey and Officer Green's name on use of force reports, and couldn't say that she thought Crowder was ignoring them, but noted that she found it odd that Crowder talked with these officers so frequently in person. (Def. Exh. 1, at 87, 89, 0110);

- An inmate reported that Crowder and Ramsey spent personal time together outside of MRDCC. (Def. Exh. 1, at 0107);

---

[5] While Plaintiff objects to the admission of the report as evidence at this stage of the proceedings, Plaintiff cites to the report to show that 1) Defendant Crowder's declaration is highly suspect and hopelessly self-serving; and 2) the facts presented in the report are more appropriately considered in non-hearsay form, such as deposition testimony, after Plaintiff has had an opportunity to conduct discovery.

16

- Sergeant Ramsey took full responsibility for the assault in front of Crowder, who instructed Ramsey to place that information in a matter of record. Asst. Warden Fisher stated that she had not reviewed Ramsey's matter of record, but that she did not think it contained a statement providing that Ramsey took full responsibility for the assault. (Def. Exh. 1, at 0109). Sergeant Ramsey's matter of record is not included in Defendants' partial submission of Detective Wright's report. (Def. Exh. 1, at 0095).

- Multiple MRDCC officers reportedly facilitated the assault by allowing Defendants Ramsey, Green, and Hanna to access Plaintiff's temporary cell. (Def. Exh. 1, at 102 (describing Officer Barnett's involvement); 104 (describing Officer Day's misrepresentation to Detective Wright regarding her assignment to a section of MRDCC where none of the inmates were located); 108 (describing Officers Clark and Stepney's refusal to waive *Miranda* rights in their interviews with Detective Wright); 113 (describing Officer Clark giving her keys to Defendants Ramsey, Green, and Hanna);

- Multiple MRDCC officers misrepresented facts concerning Crowder's attendance at the MRDCC roll call on September 30, 2013. (Def. Exh. 1, at 0114 (Officer Marcano represented that Crowder did not attend the roll call); 0111 (Lt. Dupree represented that Crowder did not attend the roll call); *c.f.* 0113 (Officer Clark represented that Crowder attended the roll call);

- A MRDCC officer who wished to remain anonymous called Detective Wright to report that former Warden Crowder was responsible for the assault. (Def. Exh. 1, at 0099-100). Detective Wright concluded that this fact "could not be proven during this investigation." (Id. at 0116).

17

The mere fact that the Maryland Department of Public Safety and Correctional Services created a 158-page investigative report concerning the assault is indicative of Plaintiff's significant need to conduct discovery into the factual substance of that report. Fed. R. Civ. P. 56(d); McDougall Decl. ¶ 3. Twelve witnesses from MRDCC gave testimony to an Assistant District Attorney in lieu of testifying before a grand jury. (Def. Exh. 1, at 0114). Furthermore, the report states that the evidence collected by the Internal Investigations Unit was *inconclusive* as to Crowder's personal involvement in the assault. (Def. Exh. 1, at. 0116). Defendants acknowledge that Crowder "was found to have performed his duties as the warden in an unprofessional manner, and his actions failed to conform to standards," but they simultaneously argue that Plaintiff has not alleged that Crowder was responsible for a system of violent and unprofessional inmate discipline which is at the root of Plaintiff's injuries in this case. (Def. Mot., p. 10). Defendants cite the refusal of a witness in Detective Wright's report to provide his identity as evidence that his story is not reliable. (Def. Mot., p. 8). Another equally probable deduction, however, is that the informant wished to remain anonymous so that Crowder would not order a retaliatory assault against him as well. If Crowder relied on Defendants Ramsey, Hanna, and Green to perform brutal hit jobs, it is also possible that Crowder relied on inmates to carry out hits on disobedient officers.

Given the central and critical allegation that former Warden Crowder ordered Plaintiff's assault—which is supported by sworn testimony—Plaintiff has a right to conduct discovery regarding the specifics of Crowder's involvement to determine whether facts exist that would support a finding of malice or willful misconduct sufficient to hold Crowder liable in his individual capacity under the Maryland Tort Claims Act. Plaintiff should also be allowed to conduct discovery into the issues that go beyond the report's reach and that could implicate

Secretary Moyer or the Department of Public Safety and Correctional Services ("DPSCS"), specifically concerning whether that department had any knowledge or involvement in ratifying or encouraging Crowder's method of jail maladministration as it relates to Plaintiff.

Given that Defendants' motion for summary judgment is made before this Court has even set a date for a scheduling conference, Plaintiff has clearly had no opportunity to refute any of the facts submitted by Defendants, let alone cross-examine Defendant Crowder on the veracity of his statements made under penalty of perjury. Plaintiff includes a declaration of counsel illustrating the factual subjects he has been unable to develop pursuant to Fed. R. Civ. P. 56(d) that are presented by Defendants evidentiary submission only. (McDougall Decl. ¶ 3). Despite the fact that Plaintiff is aware of testimony that already creates a genuine issue of material fact, this matter is not ripe for summary judgment. The facts surrounding Crowder's statements and orders at the September 30, 2013 roll call are critical to his liability, and are vigorously disputed.

### IV. CONCLUSION

Plaintiff has alleged facts that could lead a finder of fact to conclude that former Warden Crowder acted with malice or gross negligence when he held up pictures of inmates and ordered MRDCC officers to assault them with the equivalent of brass knuckles and cans of mace. This allegation would plausibly lead to Crowder's liability in his individual capacity under the MTCA, and Defendants' Motion to Dismiss as to Defendant Crowder in this capacity should be denied. If the Court is inclined to grant Defendants' request, Plaintiff should be granted leave to amend.

Despite the fact that discovery has not begun, there is already evidence that presents a genuine issue of material fact as to whether Crowder ordered the hit on Plaintiff. Because this issue is already apparent, and because Plaintiff has not yet had the opportunity to conduct thorough discovery into Crowder's involvement and creation of a culture of violent inmate discipline, Defendants' Motion for Summary Judgment should also be denied.

Respectfully submitted,

   /s/   Masai McDougall   /s/
FAREED NASSOR HAYAT, Esq.
MASAI MCDOUGALL, Esq.
The People's Law Firm, LLC
14908 Notley Road
Silver Spring, Maryland
Telephone: (301) 384-2198
Facsimile: (301) 384-3213
*Counsel for Plaintiff Nicholas Cottman*