IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| NICHOLAS COTTMAN, | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. RDB-16-3306 |
| STATE OF MARYLAND, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Nicholas Cottman ("Plaintiff" or "Cottman"), a former[1] inmate at the Maryland Reception, Diagnostic & Classification Center ("MRDCC"), has brought this action against the State of Maryland, current Secretary of the Maryland Department of Public Safety and Correctional Services ("DPSCS") Stephen T. Moyer ("Secretary Moyer"), in his *official* capacity[2], and former MRDCC Warden Tyrone Crowder ("Crowder"), *individually* and in his *official* capacity[3] (collectively the "State Defendants"); MRDCC "supervising correctional officer" Lieutenant Neil Dupree ("Dupree"), *individually* and in his *official* capacity; MRDCC "corrections officer[s]" Kwasi Ramsey ("Ramsey"), Richard Hanna ("Hanna"), Jemiah Green ("Green"), and additional "Unknown Corrections Officer(s)," *individually* and in their *official* capacities; and "Unknown Nurses," *individually* and in their

---

[1] Cottman is now incarcerated at the "North Branch Correctional Institution at 14100 McMullen Highway, SW, in Cumberland, Maryland 21502." Compl., ¶ 10, ECF No. 1.

[2] Secretary Moyer did not yet hold the office of Secretary of the Maryland Department of Public Safety and Correctional Services at the time of the facts alleged in the Complaint. Rather, former Secretary Gary D. Maynard was the DPSCS Secretary at that time. Cottman has sued Secretary Moyer "in the shoes of all of his predecessors." Compl., ¶ 19, ECF No. 1.

[3] It is undisputed that Crowder was in fact the Warden of the Maryland Reception, Diagnostic & Classification Center at the time of the events alleged in Cottman's Complaint (ECF No. 1).

*official* capacities. Compl., ¶¶ 10-22, ECF No. 1. Cottman alleges Excessive Force, in violation of Article 24 of the Maryland Declaration of Rights (Count One); Cruel and Unusual Punishment, in violation of Articles 16 and 25 of the Maryland Declaration of Rights (Count Two); Violations of his Right to Free Speech under Article 40 of the Maryland Declaration of Rights (Count Three); Battery (Count Four); Intentional Infliction of Emotional Distress (Count Five); Conspiracy (Count Six); Negligent Hiring, Training, Retention, and Supervision (Count Seven); Gross Negligence (Count Eight); Respondeat Superior (Count Nine); Deliberately Indifferent Policies, Practices, Customs, Training, and Supervision, in violation of Articles 16, 24, 25, and 40 of the Maryland Declaration of Rights (Count Ten)[4]; Cruel and Unusual Punishment, in violation of the Eighth Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983 (Count Eleven); Violations of his Due Process Rights under the Fourteenth Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983 (Count Twelve); Violations of his Right to Free Speech under the First Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983 (Count Thirteen); and a *Monell* liability claim[5], pursuant to 42 U.S.C. § 1983 (Count Fourteen); in connection with his alleged assault by corrections officers Ramsey, Hanna, and Green on September 30, 2013. *Id.* ¶¶ 87-260.[6]

---

[4] Articles 16, 24, 25, and 40 of the Maryland Declaration of Rights are interpreted *in pari materia* with their federal counterparts, the First, Eighth, and Fourteenth Amendments to the United States Constitution. *See, e.g., Borzilleri v. Mosby*, 189 F. Supp. 3d 551, 557 (D. Md. 2016)*; Evans v. State*, 914 A.2d 25, 67 (Md. 2006); *Pitsenberger v. Pitsenberger*, 410 A.2d 1052, 1056 (Md. 1980).

[5] Under the United States Supreme Court's decision in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), a Section 1983 cause of action may lie against a *local government* or *municipality* when execution of the government's *unconstitutional policy or custom* causes a plaintiff injury. *See also Walker v. Prince George's Co.*, 575 F.3d 426, 431 (4th Cir. 2009) (stating that the liability of the municipality only arises where the employees' unconstitutional actions are taken in furtherance of a municipal policy or custom).

[6] Kevin Younger, one of four other prisoners allegedly assaulted by Ramsey, Hanna, and Green on that day, has also filed a Section 1983 civil rights action in this Court against the State of Maryland, Secretary Moyer,

Currently pending before this Court are the State Defendants' Motion to Dismiss or, *in the alternative*, for Summary Judgment (ECF No. 24) and Defendant Dupree's Motion to Dismiss or, *in the alternative*, for Summary Judgment (ECF No. 41).[7] This Court has reviewed the parties' submissions, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated herein, the State Defendants' Motion to Dismiss (ECF No. 24) is GRANTED as to all claims against the State of Maryland, all claims against Secretary Moyer, and Cottman's claims against former Warden Crowder in his *official* capacity, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, but is DENIED as to Cottman's claims against Crowder in his *individual* capacity.[8] Dupree's Motion to Dismiss (ECF No. 41) is also GRANTED as to Cottman's claims against Dupree in his *official* capacity, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, but is DENIED as to Cottman's claims against Dupree in his *individual* capacity. Additionally, the State Defendants' Motion to Dismiss (ECF No. 24) and Defendant Dupree's Motion to Dismiss (ECF No. 41) are

Crowder, Dupree, Ramsey, Hanna, and Green, among others. *See Younger v. Crowder, et al.*, RDB-16-3269. Via Memorandum Opinion and Order of August 22, 2017 (ECF Nos. 72 & 73), this Court has now dismissed Younger's claims against the State of Maryland and Secretary Moyer.

[7] Defendants Ramsey, Hanna, and Green have not moved to dismiss Cottman's claims against them. The Clerk of this Court has entered Orders of Default (ECF Nos. 31 & 55) against both Green and Hanna for failure to plead or otherwise defend, and Ramsey has filed an Answer to the Complaint (ECF No. 32). Presently pending is Cottman's Motion to Strike Ramsey's Answer to the Complaint (ECF No. 35) on the grounds that Ramsey's Answer is untimely and was in fact filed after the Clerk of this Court had already entered an Order of Default against Ramsey. However, via Order dated May 31, 2017 (ECF No. 52), this Court has previously set aside that Order of Default against Ramsey and has already specifically ordered that Ramsey's Answer "not be stricken." It is within this Court's discretion to extend the deadline by which a defendant must file an Answer. *See, e.g., White v. Gregory*, 1 F.3d 267, 270 (1993). Accordingly, Cottman's Motion to Strike Ramsey's Answer to the Complaint (ECF No. 35) is now MOOT.

[8] Although Defendants have moved, in the alternative, for summary judgment, this Court will not convert their motions to motions for summary judgment. Cottman has not yet had the benefit of discovery in this case and, accordingly, has "had no opportunity to refute any of the facts submitted by Defendants." Pl. Response, p. 19, ECF No. 27. "Generally speaking, 'summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5 (1986)).

both DENIED as to Cottman's Conspiracy claim (Count Six). Therefore, Defendants State of Maryland and Secretary Moyer are DISMISSED from this action, and all claims against Crowder and Dupree in their *official* capacities are also DISMISSED. Accordingly, Counts Seven, Nine, Ten, and Fourteen, which named the State of Maryland, Secretary Moyer, and Defendants Crowder and Dupree in their *official capacities only*, are also DISMISSED in their entirety. All other claims, including those against Crowder and Dupree in their *individual* capacities in Counts One, Two, Three, Four, Five, Six, Eight, Eleven, Twelve, and Thirteen of the Complaint, shall remain.[9]

BACKGROUND

At the motion to dismiss stage, this Court accepts as true the facts alleged in the Plaintiff's Complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). On September 29, 2013, Plaintiff Nicholas Cottman ("Plaintiff" or "Cottman") was an inmate at the Maryland Reception, Diagnostic & Classification Center ("MRDCC"). Compl., ¶ 23, ECF No. 1. That evening, "he witnessed a fight between two inmates and a correction officer" in a "large dormitory style room," where he was housed. *Id.* ¶¶ 23-24.

---

[9] Also pending is Defendant Hanna's recent request that this Court set aside the Clerk's Order of Default against him (ECF No. 55), pursuant to Rule 55(c) of the Federal Rules of Civil Procedure. *See* Response, p. 1, ECF No. 56. Hanna represents that he has been named as a defendant in three separate lawsuits pertaining to the events of September 30, 2013, that "the cost of defending against three separate and simultaneous lawsuits has caused [him] extreme financial hardship," and that the complexity of "[t]he various complaints in separate jurisdictions . . . [has] also contributed to the delays in filing a responsive pleading to this instant complaint." *Id.* Hanna has already filed an Answer in the case of *Younger v. Crowder, et al.*, RDB-16-3269, referenced *supra*. He now requests that he be allowed ten days from entry of this Court's Order to file a responsive pleading to Cottman's Complaint. *Id.* at 2. Rule 55(c) of the Federal Rules of Civil Procedure authorizes this Court to "set aside an entry of default for good cause." The determination of whether good cause has been shown by the movant is within the sound discretion of this Court. *See Consolidated Masonry & Fireproofing, Inc. v. Wagman Construction Corp.*, 383 F.2d 249, 251 (4th Cir. 1967). As discussed *supra*, this Court has previously set aside the Clerk's Order of Default against Ramsey, upon a similar petition filed by Ramsey. *See* Order, ECF No. 52. For these reasons, the Clerk's Order of Default against Defendant Hanna (ECF No. 55) shall also be SET ASIDE, and Hanna shall file a responsive pleading to the Complaint within ten (10) days of this Court's Order, as requested by counsel for Hanna.

"Immediately after the conclusion of the fight, the inmates who were involved in the altercation were removed from the dorm where the fight occurred and placed in various cells in the MRDCC." *Id.* ¶ 27. Although Cottman "was not involved in this fight," he "and at least two other inmates" were also removed "and placed in other cells at the MRDCC." *Id.* ¶¶ 26-28. Cottman "was placed in a cell by himself." *Id.* ¶ 30.

On the morning of September 30, 2013, former MRDCC Warden Tyrone Crowder ("Crowder") and "supervising correctional officer" Lieutenant Neil Dupree ("Dupree") both appeared at " 'roll calls,' during which corrections officers starting their shift met and were briefed." *Id.* ¶ 31. Cottman alleges that Crowder and Dupree "held up the pictures of all of the five inmates that had been removed from the dorm room after the fight" the previous evening, including Cottman, "effectively putting a 'hit' out on the[m]." *Id.* ¶¶ 32-35. He claims that Crowder and Dupree specifically "identified the five inmates as being responsible for the fight" and stated that they were "looking for" them, "[d]espite official documents reflecting that there was no time when [their] location was unknown." *Id.* ¶¶ 32-33.

Corrections officers Kwasi Ramsey ("Ramsey"), Richard Hanna ("Hanna"), and Jemiah Green ("Green") "attended at least one of the roll calls" that morning. *Id.* ¶ 36. Cottman alleges that they were "well known to the inmates, staff and administration as violent enforcers of jail policies and procedures," and that Crowder and Dupree "had knowledge of each of [their] histories of violence." *Id.* ¶¶ 37, 80. Cottman claims that Ramsey, Hanna, and Green "believed that [the five] inmates, including [himself], had fought with a corrections officer on the previous evening" and "sought to exact revenge on [them]." *Id.* ¶ 38. Accordingly, they "moved systematically from one cell . . . to the next, brutally

assaulting each of the five inmates, including [Cottman]," with the assistance of "unknown correctional officer[s] who had the keys for [their] respective cell[s]." *Id.* ¶¶ 40-41.

Cottman alleges that Ramsey, Hanna, and Green entered his cell, told him to "get up" and proceeded to "kick" and "strike" his face, shoulder, and arm." *Id.* ¶¶ 44-47. "Ramsey struck Mr. Cottman with [ ] handcuffs wrapped around his hands, . . . at least one officer employed mixed martial arts style punches and kicks, which were designed to inflict maximum pain, . . . [and] [a]fter the assault, the officers left Mr. Cottman in his cell, bleeding and drenched in his own blood." *Id.* ¶¶ 48-52. "Within two hours of when Mr. Cottman was assaulted, each of the other four inmates were assaulted . . . in the same brutal manner," and "[b]y approximately 8:30 a.m. 'medical alerts' began to come in for each of the five inmates that former Warden Crowder and Lieutenant Dupree had identified in roll call just two hours before." *Id.* ¶¶ 7, 60. Ramsey, Hanna, and Green "proceeded to take each inmate down individually to the medical wing," although they "threaten[ed] Mr. Cottman that if he did not tell the medical staff at MRDCC that [he] had fallen off his bunk, they would beat him again." *Id.* ¶¶ 55, 61. Cottman "complied with the request to concoct a story about falling out of his bunk," and "[u]nknown nurses informed [ ] Hanna that they would not complete a triage report on the injured inmates." *Id.* ¶¶ 56, 61. Cottman alleges that Lieutenant Dupree was responsible "as supervisor to respond to medical alerts" and that he "accepted the inmates' assertion that they had 'fell off a bunk' or 'hit their head on their cell' . . . despite [their] injuries being inconsistent with [that explanation] even to the medically untrained eye." *Id.* ¶¶ 62-64. "Lieutenant Dupree failed to seek emergency medical attention for these inmates or launch an investigation into their injuries despite, by his own

account, one inmate's 'head wrapped up like a mummy,' another 'moaning and wheezing' and another offering that 'officers beat me up.' " *Id.* ¶ 64.

Cottman contends that the "assaults of the five inmates . . . as a form of discipline . . . was consistent with culture of the MRDCC under former Warden Crowder's leadership" and that Crowder and Dupree encouraged Ramsey, Hanna, and Green "to use vigilante justice and violence to control inmates and detainees." *Id.* ¶¶ 65-66. He further claims that Crowder "failed to adequately supervise MRDCC corrections officers in proper methods for disciplining of inmates" and that the Secretary of the Maryland Department of Public Safety and Correctional Services "had knowledge of Former Warden Crowder and Lieutenant Dupree's reputation, tactics, and implementation of policy concerning vigilante justice and violence as a means of inmate and detainee control." *Id.* ¶¶ 69, 86. "An internal affairs investigation was initiated regarding . . . [the] assault of the five inmates," and Green, Ramsey, and Hanna were all criminally indicted in connection with the events alleged herein. *Id.* ¶ 76. "Green was tried and found guilty of assault against Mr. Cottman by a jury" and "Hanna pled guilty to the charges related to the assault on Mr. Cottman on May 6, 2015." *Id.* ¶¶ 77-78. "Crowder is no longer the warden of MRDCC following the . . . assault of the five inmates." *Id.* ¶ 75. Cottman has now brought this civil action against the State of Maryland, Secretary Moyer, and former Warden Crowder (collectively the "State Defendants"); Lieutenant Dupree; "corrections officers" Ramsey, Hanna, and Green, and additional "Unknown Corrections Officer(s);" and "Unknown Nurses," alleging violations of his rights under the United States Constitution and the Maryland Declaration of Rights, Maryland tort law claims, and a single claim of *Monell* liability against the State of Maryland.

<u>STANDARD OF REVIEW</u>

I.  <u>Motion to Dismiss Under Rule 12(b)(1) of the Federal Rules of Civil Procedure</u>

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint. *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). This challenge under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted). With respect to a facial challenge, a court will grant a motion to dismiss for lack of subject matter jurisdiction "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis*, 367 F. Supp. 2d at 799. Where the challenge is factual, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. As this Court has explained in *Dennard v. Towson Univ.*, 62 F. Supp. 3d 446, 449 (D. Md. 2014), "[a]n assertion of governmental immunity is properly addressed under Rule 12(b)(1)." (citing *Smith v. WMATA*, 290 F.3d 201, 205 (4th Cir. 2002)). A plaintiff carries the burden of establishing subject matter jurisdiction. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).

II.  <u>Motion to Dismiss Under Rule 12(b)(6) of the Federal Rules of Civil Procedure</u>

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The

purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). The United States Supreme Court's recent opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)). Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679.

ANALYSIS

I.      The State Defendants' Motion to Dismiss (ECF No. 24)

    A.      The State of Maryland

Although Plaintiff Cottman has brought claims against the State of Maryland for Excessive Force, in violation of Article 24 of the Maryland Declaration of Rights (Count

One); Cruel and Unusual Punishment, in violation of Articles 16 and 25 of the Maryland Declaration of Rights (Count Two); Violations of his Right to Free Speech under Article 40 of the Maryland Declaration of Rights (Count Three); Respondeat Superior (Count Nine); Deliberately Indifferent Policies, Practices, Customs, Training, and Supervision, in violation of Articles 16, 24, 25, and 40 of the Maryland Declaration of Rights (Count Ten); and a *Monell* liability claim, pursuant to 42 U.S.C. § 1983 (Count Fourteen), Cottman now seems to acknowledge that those claims are barred by "the State's exercise of Eleventh Amendment Immunity." Pl. Response, p. 1, n. 1, ECF No. 27.

As Judge Paul Grimm of this Court has confirmed this month in *McIntosh v. Div. of Corr.*, No. PWG-16-1320, 2017 WL 3412081, at \*4 (D. Md. Aug. 7, 2017), "[t]he Eleventh Amendment [to the United States Constitution] bars suits for damages against a state in federal court unless the state has waived sovereign immunity or Congress has abrogated its immunity." (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984)). "Although the State of Maryland has waived its sovereign immunity for certain types of cases brought in state court, *see* Md. Code Ann., State Gov't § 12-104, it has not waived its immunity under the Eleventh Amendment to suit in federal court." *Id.* Additionally, although "some entities, such as local governing units, have been deemed suable under § 1983," pursuant to the United States Supreme Court's decision in *Monell v. Dep't of Soc. Servs. of N.Y,* 436 U.S. 658, 690 (1978), "states are not suable under § 1983." *Dingess v. Virginia Dep't of Corr.*, No. 7:12CV00630, 2012 WL 6761883, at \*1 (W.D. Va. Dec. 31, 2012). The Supreme Court has made clear in *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989) that *states themselves* are not suable under Section 1983 because they enjoy Eleventh

Amendment immunity. "If sovereign immunity has not been waived, federal courts lack subject-matter jurisdiction over the claim[s]." *Robinson v. Pennsylvania Higher Educ. Assistance Agency*, No. GJH-15-0079, 2017 WL 1277429, at *2 (D. Md. Apr. 3, 2017). Therefore, the State Defendants' Motion to Dismiss (ECF No. 24) is GRANTED as to Cottman's claims against the State of Maryland in Counts One, Two, Three, Nine, Ten, and Fourteen of the Complaint. All claims against the State of Maryland shall be DISMISSED for lack of subject-matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Count Fourteen, Cottman's *Monell* liability claim against the State of Maryland alone, shall be DISMISSED in its entirety.

B.    <u>Secretary Stephen T. Moyer</u>

Cottman has brought claims against the current Secretary of the Maryland Department of Public Safety and Correctional Services ("DPSCS") Stephen T. Moyer ("Secretary Moyer"), in his *official* capacity only, for Negligent Hiring, Training, Retention, and Supervision (Count Seven); Respondeat Superior (Count Nine); and Deliberately Indifferent Policies, Practices, Customs, Training, and Supervision, in violation of Articles 16, 24, 25, and 40 of the Maryland Declaration of Rights (Count Ten). Compl., ¶¶ 154-200, ECF No. 1. As with Cottman's claims against the State of Maryland, all claims against Secretary Moyer in his *official* capacity shall be dismissed under the doctrine of sovereign immunity. "Although state officials are literally persons, 'a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.' " *McIntosh*, 2017 WL 3412081, at *4 (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal

citations omitted)). Cottman does not contest the dismissal of his claims against Secretary Moyer in his *official capacity*. *See Pl. Response*, p. 1, n. 1, ECF No. 27 ("Plaintiff acknowledges that the State's exercise of Eleventh Amendment Immunity prevents him from proceeding against Defendants Crowder and Moyer in their official capacity.") As noted *supra*, he has raised no claims against Moyer in his *individual* capacity. Therefore, the State Defendants' Motion to Dismiss (ECF No. 24) is GRANTED as to Cottman's claims against Secretary Moyer in Counts Seven, Nine, and Ten. All claims against Secretary Moyer in his *official* capacity shall be DISMISSED for lack of subject-matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Accordingly, Counts Nine and Ten, in which Cottman has named only the State of Maryland and Secretary Moyer, in his *official* capacity, shall both be DISMISSED in their entirety.

      C.    <u>Former Warden Tyrone Crowder</u>

Cottman has raised a total of eleven counts against the final State Defendant, former Warden of the Maryland Reception, Diagnostic & Classification Center ("MRDCC") Tyrone Crowder ("Crowder"). Cottman has brought claims against Warden Crowder *individually* and in his *official* capacity, for Excessive Force, in violation of Article 24 of the Maryland Declaration of Rights (Count One); Cruel and Unusual Punishment, in violation of Articles 16 and 25 of the Maryland Declaration of Rights (Count Two); Violations of his Right to Free Speech under Article 40 of the Maryland Declaration of Rights (Count Three); Battery (Count Four); Intentional Infliction of Emotional Distress (Count Five); Conspiracy (Count Six); Gross Negligence (Count Eight); Cruel and Unusual Punishment, in violation of the Eighth Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983 (Count

Eleven); Violations of his Due Process Rights under the Fourteenth Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983 (Count Twelve); and Violations of his Right to Free Speech under the First Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983 (Count Thirteen). Compl., ¶¶ 87-249, ECF No. 1. Additionally, Cottman has brought one claim against Crowder in his *official capacity only* for Negligent Hiring, Training, Retention, and Supervision (Count Seven). *Id.* ¶¶ 154-170. Crowder has now moved to dismiss Cottman's claims against him.

Cottman's claims against Crowder, in his *official* capacity, are likewise barred by the doctrine of Eleventh Amendment sovereign immunity. As noted *supra*, "[a]lthough state officials are literally persons, 'a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.' " *McIntosh*, 2017 WL 3412081, at *4 (quoting *Will,* 491 U.S. at 71 (internal citations omitted)). In fact, this Court has specifically held in *Young v. Bishop*, No. TDC-16-0242, 2017 WL 784664, at *3 (D. Md. Feb. 28, 2017) that the Eleventh Amendment immunizes a prison Warden employed by the Maryland Department of Public Safety and Correctional Services from suit as to all claims, with the exception of those seeking injunctive relief. As noted above, Cottman has specifically acknowledged "that the State's exercise of Eleventh Amendment Immunity prevents him from proceeding against Defendant[ ] Crowder." Pl. Response, p. 1, n. 1, ECF No. 27. Therefore, the State Defendants' Motion to Dismiss (ECF No. 24) is GRANTED as to Cottman's claims against Crowder in his *official* capacity. All claims against Crowder in his *official* capacity shall be

DISMISSED for lack of subject-matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

As to Cottman's claims against Crowder in his *individual* capacity, Crowder contends that he is shielded from liability as to all claims under the doctrine of "qualified immunity." "Qualified immunity may be invoked by a government official sued in his personal, or individual, capacity." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985)). As the United States Court of Appeals for the Fourth Circuit has explained this month in *Humbert v. Mayor & City Council of Baltimore City*, No. 15-1768, 2017 WL 3366349, at *4 (4th Cir. Aug. 7, 2017), "[q]ualified immunity shields government officials from liability in a § 1983 suit as long as their conduct has not violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the facts illustrate that the officer violated the plaintiff's constitutional right . . . , and (2) whether the right was clearly established at the time of the alleged event such that 'a reasonable officer would have understood that his conduct violated the asserted right.' " *Id.* (quoting *Miller v. Prince George's County*, 475 F.3d 621, 627 (4th Cir. 2007)). "The answer to both questions must be in the affirmative to defeat the officer's entitlement to immunity." *Id.* Although "[a] qualified immunity defense can be presented in a Rule 12(b)(6) motion," the Fourth Circuit has observed that "when asserted at this early stage in the proceedings, 'the defense faces a formidable hurdle' and 'is usually not successful.' " *Owens v. Baltimore City*

*State's Attorneys Office*, 767 F.3d 379, 396 (4th Cir. 2014) (quoting *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 191–92 (2d Cir. 2006)).

Cottman has undoubtedly alleged a violation of his rights. "There is no serious dispute concerning the allegations of excessive use of force by certain correctional officers." Mem. Supp. State Def. Mot., p. 2, ECF No. 24-1. Although Cottman does not allege that Crowder *personally* assaulted him, he has stated a claim for "supervisory liability" under 42 U.S.C. § 1983. As this Court has confirmed this month in *Young-Bey v. B.A. Daddysboy, Cos*, et al., No. JFM-15-3642, 2017 WL 3475667, at *6 (D. Md. Aug. 10, 2017), "[i]t is well established that the doctrine of *respondeat superior* does not apply in § 1983 claims." (citing *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004)). However, "[l]iability of supervisory officials 'is not based on ordinary principles of *respondeat superior*, but rather is premised on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.' " *Id.* (quoting *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001)). "Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Id.* (citing *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

Cottman has not only alleged that Crowder had actual or constructive knowledge of his assault on September 30, 2013 and showed deliberate indifference to the actions of Officers Ramsey, Hanna, and Green, but has in fact alleged that Crowder "effectively put[ ] a 'hit' out on" Cottman and the other four inmates he "identified . . . as being responsible for the fight." Compl., ¶¶ 32, 35, ECF No. 1. He alleges that Warden Crowder "attended one of the roll calls" on the morning of September 30, 2013 and "held up pictures of all of the inmates that had been removed from the dorm room after the fight on September 29, 2013, including [Cottman]." *Id.* ¶ 32. Cottman further alleges that during that same roll call, Warden Crowder "identified the five inmates as being responsible for the fight" and stated that they were "looking for" them, "[d]espite official documents reflecting that there was no time when [their] location was unknown." *Id.* ¶¶ 32-33. Cottman has alleged that Warden Crowder "had knowledge" of Green, Hanna, and Ramsey's "histories of violence," yet "failed to discipline" them. *Id.* ¶¶ 69, 80. As for an "affirmative causal link between [Crowder's] inaction and the . . . injury suffered," Cottman has clearly alleged that, following the roll calls, Ramsey, Hanna, and Green "believed that [the five] inmates, including [Cottman], had fought with a corrections officer on the previous evening," "sought to exact revenge on [them]" and, accordingly, "moved systematically from one cell . . . to the next, brutally assaulting each of the five inmates, including [Cottman]." *Id.* ¶¶ 38, 40-41.

Cottman has likewise sufficiently alleged a violation of rights that were "clearly established at the time of the alleged event," the second element necessary to defeat Crowder's assertion of qualified immunity at this stage. The United States Court of Appeals for the Fourth Circuit has recently confirmed in *Bounds v. Parsons*, No. 16-1686, 2017 WL

2992085, at *3 (4th Cir. July 14, 2017) that "satisfy[ing] the 'clearly established' prong of the qualified immunity inquiry [does not] require 'a case directly on point.' " (quoting *Smith v. Ray*, 781 F.3d 95, 100 (4th Cir. 2015)). "[T]he lodestar for whether a right was clearly established is whether the law 'gave the officials 'fair warning' that their conduct was unconstitutional.' " *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (quoting *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 313 (4th Cir. 2006)). It is well-established that beating a prison inmate for purposes other than to restore or maintain prison security or for the prisoner's own safety violates that prisoner's rights under the Eighth and Fourteenth Amendments to the United States Constitution. *See, e.g., Hudson v. McMillian*, 503 U.S. 1 (1992). As to Cottman's claim for violations of his right to free speech under the First Amendment to the United States Constitution in Count Thirteen, he has likewise stated a claim for relief. As the Fourth Circuit has confirmed in *Ross v. Reed*, 719 F.2d 689, 695 (4th Cir. 1983), a prison guard who has "engaged in censorship [is] not entitled to qualified immunity." (citing *McNamara v. Moody,* 606 F.2d 621 (5th Cir. 1979)). Although it is well-established that "restrictions on inmates' first amendment rights . . . must be justified by using narrowly drawn means to further substantial governmental interests in security, rehabilitation, and order," *see id.*, the State Defendants do not argue that Hanna, Green, and Ramsey's act of compelling Cottman to lie to medical personnel about the cause of his injuries was in any way supported by those governmental interests. As this Court has recently confirmed in *Jones v. Chapman*, No. ELH-14-2627, 2017 WL 2472220, at *34 (D. Md. June 7, 2017), "although the burden is on the plaintiff to prove that a constitutional violation occurred, the *defendant must prove* that the right was not clearly established." (citing *Henry v.*

*Purnell*, 501 F.3d 374, 377–78 (4th Cir. 2007)). Defendants have cited no authority warranting dismissal of Cottman's allegations on qualified immunity grounds at this stage, although this Court's "ruling on qualified immunity at the motion to dismiss stage does not necessarily preclude revisiting the issue at the summary judgment stage." *Garcia v. Montgomery Cty., Maryland*, 145 F. Supp. 3d 492, 508 n. 2 (D. Md. 2015) (*citing Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)). With respect to Cottman's claims against Crowder under Articles 16, 24, 25, and 40 of the Maryland Declaration of Rights (Counts One, Two & Three), Warden Crowder's qualified immunity argument is equally unsuccessful as qualified immunity is not a defense to claims under the Maryland Constitution. *See Jones*, 2017 WL 2472220, at *33 (citing *Littleton v. Swonger*, 502 F. App'x 271, 274 & n. 2 (4th Cir. 2012)).

To the extent Crowder also seeks statutory immunity under the Maryland Tort Claims Act ("MTCA"), Md. Code Ann., State Gov't §§ 12–101 *et seq.*, his motion likewise fails. "Maryland officials are granted immunity under the Maryland Tort Claims Act . . . for [tortious acts or omissions] committed within the scope of their duties when the violations are made 'without malice or gross negligence.' " *Housley v. Holquist*, 879 F. Supp. 2d 472, 482–83 (D. Md. 2011) (quoting *Lee v. Cline*, 863 A.2d 297, 304 (Md. 2004)). "[A]n officer's actions are grossly negligent 'when they are so heedless and incautious as necessarily to be deemed unlawful and wanton, manifesting such a gross departure from what would be the conduct of an ordinarily careful and prudent person under the same circumstances so as to furnish evidence of indifference to consequences.' " *Id.* (quoting *Henry v. Purnell*, 652 F.3d 524, 536 (4th Cir. 2011)). For the reasons set forth above, Cottman has clearly stated a claim

of "malice or gross negligence," as he has alleged that Warden Crowder effectively sanctioned an attack against him and four other inmates.

Although Defendants have submitted a Declaration of Crowder (ECF No. 24-3), in which he denies Cottman's allegations, this Court accepts as true the facts alleged in the Plaintiff's Complaint at the motion to dismiss stage. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). As noted *supra*, this Court will not convert the pending motions to motions for summary judgment. Additionally, the Fourth Circuit has made clear that "[w]hether an officer's actions are grossly negligent, and therefore unprotected by statutory immunity, is generally a question for the jury." *Henry*, 652 F.3d at 536 (citing *Taylor v. Harford County Dep't of Soc. Servs.*, 862 A.2d 1026, 1034 (Md. 2004)). To the extent Crowder seeks to invoke Maryland common law "public official immunity," his motion likewise fails. The Court of Appeals of Maryland has made clear in *Lee v. Cline*, 863 A.2d 297, 305 (Md. 2004) that "Maryland common law qualified immunity in tort suits, for public officials performing discretionary acts, has no application in tort actions based upon alleged violations of state constitutional rights or tort actions based upon most so-called 'intentional torts.' " For all of these reasons, the State Defendants' Motion to Dismiss (ECF No. 24) is DENIED as to Cottman's claims against Crowder, in his *individual* capacity, in Counts One, Two, Three, Four, Five, Six, Eight, Eleven, Twelve, and Thirteen of the Complaint.

II.     Lieutenant Neil Dupree's Motion to Dismiss (ECF No. 41)

Cottman has brought eleven counts against Lieutenant Neil Dupree ("Dupree"), a "supervising correctional officer" at the MRDCC. Cottman has brought claims against Lieutenant Dupree *individually* and in his *official* capacity for Excessive Force, in violation of

Article 24 of the Maryland Declaration of Rights (Count One); Cruel and Unusual Punishment, in violation of Articles 16 and 25 of the Maryland Declaration of Rights (Count Two); Violations of his Right to Free Speech under Article 40 of the Maryland Declaration of Rights (Count Three); Battery (Count Four); Intentional Infliction of Emotional Distress (Count Five); Conspiracy (Count Six); Gross Negligence (Count Eight); Cruel and Unusual Punishment, in violation of the Eighth Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983 (Count Eleven); Violations of his Due Process Rights under the Fourteenth Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983 (Count Twelve); and Violations of his Right to Free Speech under the First Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983 (Count Thirteen). Compl., ¶¶ 87-249, ECF No. 1. Additionally, Cottman has brought one claim against Dupree in his *individual capacity only* for Negligent Hiring, Training, Retention, and Supervision (Count Seven). *Id.* ¶¶ 154-170.

As discussed *supra*, when an individual is sued in his official capacity, the suit is essentially against the governmental entity. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). In his opposition to the pending motion, Cottman does not seriously contest the dismissal of his *official capacity* suit against Lieutenant Dupree. As with Secretary Moyer and Warden Crowder, Dupree's Motion to Dismiss (ECF No. 41) is GRANTED as to all claims against Lieutenant Dupree in his *official* capacity. Cottman's claims against Lieutenant Dupree in his *official* capacity shall be DISMISSED for lack of subject-matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Accordingly, Count Seven of the Complaint, which alleged Negligent Hiring, Training, Retention and Supervision by Secretary

20

Moyer, Warden Crowder, and Lieutenant Dupree, in their *official capacities only*, shall now be DISMISSED in its entirety.

Like Crowder, Dupree further contends that Cottman's claims against him in his *individual* capacity are barred by the doctrine of qualified immunity. However, for the same reasons discussed *supra* with respect to Crowder, Cottman has alleged facts sufficient to overcome Dupree's assertion of qualified immunity at the motion to dismiss stage. As set forth above, "[q]ualified immunity shields government officials from liability in a § 1983 suit," but a plaintiff may defeat an officer's assertion of immunity by demonstrating that "the officer violated the plaintiff's constitutional right [and] . . . the right was clearly established at the time of the alleged event such that 'a reasonable officer would have understood that his conduct violated the asserted right.' " *Humbert*, 2017 WL 3366349, at *4 (quoting *Miller*, 475 F.3d at 627). As noted *supra*, although "[a] qualified immunity defense can be presented in a Rule 12(b)(6) motion, . . . 'the defense faces a formidable hurdle' and 'is usually not successful.' " *Owens*, 767 F.3d at 396 (quoting *Field Day, LLC*, 463 F.3d at 191–92). This Court's ruling "does not necessarily preclude revisiting the issue at the summary judgment stage." *Garcia*, 145 F. Supp. 3d at 508 n. 2 (citing *Behrens*, 516 U.S. at 309).

As discussed *supra*, Cottman has undoubtedly alleged a violation of his constitutional rights. "There is no dispute that [Cottman] and four other inmates were assaulted by correctional officers Kwasi Ramsey, Jemiah Green, and Richard Hanna at MRDCC on September 30, 2013." Mem. Supp. Dupree Mot., p. 13, ECF No. 41-1. As with Warden Crowder, Cottman has not alleged that Dupree *personally* assaulted him, but he has stated a claim for "supervisory liability" under 42 U.S.C. § 1983. As set forth *supra*, "[s]upervisory

liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Young-Bey*, 2017 WL 3475667, at *6 (citing *Shaw*, 13 F.3d at 799).

Although Dupree denies serving in an "administrative" role at MRDCC, *see* Mem. Supp. Dupree Mot., p. 6, ECF No. 41-1, Cottman has specifically alleged that he served as a "supervising correctional officer" and "Lieutenant" at the time of the events alleged in the Complaint, Compl., ¶ 16, ECF No. 1. Cottman has alleged that Dupree was "responsible for the operation and implementation of policies at MRDCC." *Id.* ¶ 82. Cottman has not only alleged that Dupree had actual or constructive knowledge of his assault on September 30, 2013 and showed deliberate indifference to the actions of Officers Ramsey, Green, and Hanna, but has in fact alleged that he "effectively put[ ] a 'hit' out" on Cottman and the four other inmates and "encouraged" MRDCC correctional officers "to use vigilante justice and violence to control inmates and detainees." *Id.* ¶¶ 35, 66. Cottman alleges that Dupree appeared at a roll call and "held up the pictures of all of the five inmates that had been removed from the dorm room after the fight" the previous evening, including Cottman. *Id.* ¶¶ 32-35. He claims that Dupree "identified the five inmates as being responsible for the fight" and stated that they were "looking for" them, "[d]espite official documents reflecting that there was no time when [their] location was unknown." *Id.* ¶¶ 32-33.

As for an "affirmative causal link between [Crowder's] inaction and the . . . injury suffered," Cottman has alleged that Ramsey, Hanna, and Green "believed that [the five] inmates, including [Cottman], had fought with a corrections officer on the previous evening," "sought to exact revenge on [them]" and, accordingly, "moved systematically from one cell . . . to the next, brutally assaulting each of the five inmates, including [Cottman]." *Id.* ¶¶ 38, 40-41. Cottman further claims that Dupree was responsible "as supervisor to respond to medical alerts" and that he "accepted the inmates' assertion that they had 'fell off a bunk' or 'hit their head on their cell' . . . despite [their] injuries being inconsistent with [that explanation] even to the medically untrained eye." *Id.* ¶¶ 62-64. "Lieutenant Dupree failed to seek emergency medical attention for these inmates or launch an investigation into their injuries despite, by his own account, one inmate's 'head wrapped up like a mummy,' another 'moaning and wheezing' and another offering that 'officers beat me up.' " *Id.* ¶ 64.

As discussed *supra*, Cottman has also sufficiently alleged that his violated rights were clearly established at the time of the alleged event, the second element necessary to defeat Dupree's assertion of qualified immunity at this stage. It is well-established that beating a prison inmate for purposes other than to restore or maintain prison security or for the prisoner's own safety violates that prisoner's rights under the Eighth and Fourteenth Amendments to the United States Constitution. *See, e.g., Hudson v. McMillian*, 503 U.S. 1 (1992). With respect to Cottman's First Amendment claims, the Fourth Circuit has confirmed in *Ross v. Reed*, 719 F.2d 689, 695 (4th Cir. 1983) that a prison guard who has "engaged in censorship [is] not entitled to qualified immunity." (citing *McNamara v. Moody*, 606 F.2d 621 (5th Cir. 1979)). Accordingly, Cottman's Section 1983 claims against Dupree

shall not be dismissed on qualified immunity grounds. With respect to Cottman's claims against Dupree under Articles 16, 24, 25 & 40 of the Maryland Declaration of Rights (Counts One, Two & Three), his argument also fails as qualified immunity is not a defense to claims under the Maryland Constitution, as discussed *supra*. *See Jones*, 2017 WL 2472220, at *33 (citing *Littleton*, 502 F. App'x at 274 & n. 2).

Dupree additionally argues that he is entitled to statutory immunity under the Maryland Tort Claims Act ("MTCA"), Md. Code State Gov't, §§ 12–101 *et seq*. *See* Mem. Supp. Dupree. Mot., p. 18, ECF No. 41-1. As discussed above, "Maryland officials are granted immunity under the Maryland Tort Claims Act . . . for [tortious acts or omissions] committed within the scope of their duties when the violations are made 'without malice or gross negligence.' " *Housley*, 879 F. Supp. 2d at 482–83 (D. Md. 2011) (quoting *Lee*, 863 A.2d at 304). However, as with Crowder, Cottman has clearly stated a claim of "malice or gross negligence" against Dupree, as he has alleged that he specifically participated in encouraging the brutal retaliatory attacks on September 30, 2013.

Although Dupree has submitted a Declaration (ECF No. 41-2), in which he denies Cottman's allegations, this Court accepts as true the facts alleged in a plaintiff's complaint at the motion to dismiss stage. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). As noted *supra*, this Court will not convert the pending motions to motions for summary judgment. Additionally, the Fourth Circuit has made clear that "[w]hether an officer's actions are grossly negligent, and therefore unprotected by statutory immunity, is generally a question for the jury." *Henry*, 652 F.3d at 536 (citing *Taylor v. Harford County Dep't of Soc. Servs.*, 862 A.2d 1026, 1034 (Md. 2004)). To the extent Dupree seeks to invoke Maryland

common law "public official immunity," his motion likewise fails. The Court of Appeals of Maryland has made clear in *Lee v. Cline*, 863 A.2d 297, 305 (Md. 2004) that "Maryland common law qualified immunity in tort suits, for public officials performing discretionary acts, has no application in tort actions based upon alleged violations of state constitutional rights or tort actions based upon most so-called 'intentional torts.'" For all of these reasons, Dupree's Motion to Dismiss (ECF No. 60) is DENIED as to Cottman's claims against him in his *individual* capacity in Counts One, Two, Three, Four, Five, Six, Eight, Eleven, Twelve, and Thirteen of the Complaint.

III.   Cottman's Conspiracy Claim (Count Six)

Defendants Crowder and Dupree have both moved to dismiss Cottman's Conspiracy claim against them in Count Six of the Complaint. They contend that Cottman has failed to allege "a concerted effort or agreement between [them] to deny [him] a constitutional right" and that he has raised only "naked assertions." Mem. Supp. Dupree Mot., p. 25, ECF No. 41-1. "Under Maryland law, civil conspiracy is defined as the 'combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff.'" *Marshall v. James B. Nutter & Co.*, 758 F.3d 537, 541 (4th Cir. 2014) (quoting *Hoffman v. Stamper*, 867 A.2d 276, 290 (Md. 2005) (quoting *Green v. Wash. Suburban Sanitary Comm'n*, 269 A.2d 815, 824 (Md. 1970))). "In addition to proving an agreement, 'the plaintiff must also prove the commission of an overt act, in furtherance of the agreement, that caused the plaintiff to suffer actual injury.'" *Id.*

Cottman has specifically alleged that the Defendants "*agreed* that the corrections officers would batter, inflict emotional distress upon and deprive the rights of Mr. Cottman." Compl., ¶ 150, ECF No. 1 (emphasis added). He has alleged that on the morning of September 30, 2013, Crowder and Dupree both appeared at " 'roll calls,' during which corrections officers starting their shift met and were briefed." *Id.* ¶ 31. Cottman alleges that Crowder and Dupree "held up the pictures of all of the five inmates that had been removed from the dorm room after the fight" the previous evening, including Cottman, "effectively putting a 'hit' out on the[m]." *Id.* ¶¶ 32-35. He claims that Warden Crowder and Lieutenant Dupree specifically "identified the five inmates as being responsible for the fight" and stated that they were "looking for" them, "[d]espite official documents reflecting that there was no time when [their] location was unknown." *Id.* ¶¶ 32-33. For these reasons, Cottman has alleged both elements of a conspiracy claim. Accordingly, the State Defendants' Motion to Dismiss (ECF No. 24) and Defendant Dupree's Motion to Dismiss (ECF No. 41) are both DENIED as to Cottman's Conspiracy claim (Count Six).

## CONCLUSION

For the foregoing reasons, the State Defendants' Motion to Dismiss (ECF No. 24) is GRANTED as to all claims against the State of Maryland, all claims against Secretary Moyer, and Cottman's claims against former Warden Crowder in his *official* capacity, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, but is DENIED as to Cottman's claims against Crowder in his *individual* capacity. Dupree's Motion to Dismiss (ECF No. 41) is also GRANTED as to Cottman's claims against Dupree in his *official* capacity, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, but is DENIED as to Cottman's

claims against Dupree in his *individual* capacity. Additionally, the State Defendants' Motion to Dismiss (ECF No. 24) and Defendant Dupree's Motion to Dismiss (ECF No. 41) are both DENIED as to Cottman's Conspiracy claim (Count Six). Therefore, Defendants State of Maryland and Secretary Moyer are DISMISSED from this action, and all claims against Crowder and Dupree in their *official* capacities are also DISMISSED. Accordingly, Counts Seven, Nine, Ten, and Fourteen, which named the State of Maryland, Secretary Moyer, and Defendants Crowder and Dupree in their *official capacities only*, are also DISMISSED in their entirety. All other claims, including those against Crowder and Dupree in their *individual* capacities in Counts One, Two, Three, Four, Five, Six, Eight, Eleven, Twelve, and Thirteen of the Complaint, shall remain.

A separate Order follows.

Dated:          August 29, 2017

                                        _____/s/_____
                                        Richard D. Bennett
                                        United States District Judge